CASE NO. 08-4435

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ALEATHER THOMPSON,

Plaintiff-Appellant,

v.

UHHS RICHMOND HEIGHTS HOSPITAL INC., *et al.*

Defendants-Appellees.

**On Appeal From The United States District Court
for the Northern District of Ohio, Eastern Division**

**Brief of Defendants-Appellees Sodexho and Steven Savanick**

Margaret M. Koesel (0041537)
Nicole J. Quathamer (0070893)
PORTER WRIGHT MORRIS & ARTHUR LLP
925 Euclid Avenue, Suite 1700
Cleveland, OH  44115-1483
(216)443-9000/Fax(216)443-9011
mkoesel@porterwright.com
nquathamer@porterwright.com

Attorneys for Defendants-
Appellees, Sodexho and Steven
Savanick

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 08-4435                    Case Name: Thompson v. UHHS Richmond Hts. Hos

Name of counsel: Nicole J. Quathamer

Pursuant to 6th Cir. R. 26.1, Sodexho Management, Inc.
                               *Name of Party*

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

   No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

   No.

## CERTIFICATE OF SERVICE

I certify that on _____December 3, 2008_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

                    s/ Nicole J. Quathamer

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

Corporate Disclosure Statement ............................................................i

Table of Contents ...............................................................................ii

Table of Authorities ............................................................................v

Oral Argument Is Not Warranted............................................................1

Statement of the Issues .......................................................................2

Statement of the Case ........................................................................3

Statement of the Facts.........................................................................4

    I.     The Parties...........................................................................4

    II.    Sodexho's Contract for Services at UH ....................................6

    III.   Sodexho Starts Work at UH .....................................................8

    IV.   Ms. Thompson's Employment at UH .......................................9

    V.    Ms. Thompson's NSD Position is Eliminated...........................11

Summary of Argument.........................................................................13

Argument..........................................................................................15

    I.     Standard of Review................................................................15

    II.    The District Court Properly Granted Summary Judgment on
          Ms. Thompson's Race Discrimination Claims.........................16

        A.   Ms. Thompson's termination claim fails as a matter
            of law .........................................................................16

1.     Ms. Thompson cannot establish a required element of the prima facie case because she was not replaced.................................................17

2.     Sodexho articulated a legitimate business reason for recommending the elimination of Ms. Thompson's position, and Ms. Thompson fails to prove pretext ...................................................22

      a.   Sodexho recommended the elimination of Ms. Thompson's position for legitimate, non-discriminatory business reasons......................23

      b.   Ms. Thompson cannot demonstrate pretext ....24

B.     Ms. Thompson's disparate treatment claim fails as a matter of law .........................................................30

C.     Ms. Thompson's hostile work environment claim fails as a matter of law.........................................................33

1.     There is no evidence of harassing conduct towards Ms. Thompson........................................33

2.     Ms. Thompson cannot demonstrate a hostile work environment based on the alleged mistreatment of other African-American employees ..........................................................37

3.     Ms. Thompson failed to meet her burden of proof for a hostile work environment claim ..........43

III.   The District Court Properly Granted Summary Judgment on Ms. Thompson's Retaliation Claim ....................................45

IV.   The District Court Properly Granted Sodexho and Mr. Savanick's Motion on Ms. Thompson's FMLA Interference Claim................................................................48

A.     Mr. Savanick cannot be held individually liable

under the FMLA ............................................................48

B.    There is no evidence Sodexho or Mr. Savanick
      interfered with Ms. Thompson's FMLA rights ................49

Conclusion    .....................................................................52

Certificate of Compliance.....................................................53

Certificate of Service............................................................54

Addendum ..........................................................................55

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66 (6th Cir. 1982)..................................................................................39

*Alderdice v. American Health Holding, Inc.*, 118 F. Supp. 2d 856 (S.D. Ohio 2000) .........................................................39, 42

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).......................39

*Arban v. West Publ. Corp.*, 345 F.3d 390 (6th Cir. 2003).................50

*Bowman v. Shawnee State University*, 220 F.3d 456 (6th Cir. 2000)..............................................................................33, 37

*Braithwaite v. Timken Co.*, 258 F.3d 488 (6th Cir. 2001)..................16

*Burnett v. Tyco Corp.*, 203 F.3d 980 (6th Cir. 2000) ........................41

*Chappell v. GTE Prods. Corp.,* 803 F.2d 261 (6th Cir. 1986).....36, 41

*Christopher v. Stouder Mem. Hospital*, 936 F.2d 870 (6th Cir. 1991)..............................................................................21

*Clark County School District v. Breeden*, 532 U.S. 268 (2001) ........46

*Clayton v. Meijer*, 281 F.3d 605 (6th Cir. 2002)................................16

*Cline v. BWXT Y-12, LLC*, 521 F.3d 507 (6th Cir. 2008)..................45

*Das v. Ohio State Univ.*, 57 Fed. Appx. 675 (6th Cir. 2003).......35, 41

*Dews v. A.B. Dick Co.*, 231 F.3d 1016 (6th Cir. 2000) .....................25

*Faragher v. City of Boca Raton,* 524 U.S. 775 (1988)......................37

*Fenton v. Hi-SAN, Inc.*, 174 F.3d 827 (6th Cir 1999)........................45

*Fite v. First Tenn. Prod. Credit Association*, 861 F.2d 884 (6th Cir. 1988) ............................................................. 22

*Grace v. USCAR*, 521 F.3d 655 (6th Cir. 2008) ............................... 30

*Hafford v. Seidner*, 183 F.3d 506 (6th Cir. 1999) ............................. 33

*Hamilton v. Starcom Mediavest Group, Inc.*, 522 F.3d 623 (6th Cir. 2008) ............................................................... 45

*Harris v. Forklift System, Inc.*, 510 U.S. 17 (1993) ..................... 43, 44

*Hartsel v. Keys*, 87 F.3d 795 (6th Cir. 1996) ..................................... 22

*Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321 (6th Cir. 2008) ...... 38

*Hudson v. Chi. Trans. Authority*, 375 F.3d 552 (7th Cir. 2004) ......... 24

*Johnson v. Karnes*, 398 F.3d 868 (6th Cir. 2005) .............................. 16

*Johnson v. McDonald & Co. Sec., Inc.*, 982 F. Supp. 483 (N.D. Ohio 1997) ......................................................... 20, 35

*Johnson v. University of Cincinnati*, 215 F.3d 561 (6th Cir. 2000) ................................................................... 17

*Kline v. Tennessee Valley Authority*, 128 F.3d 337 (6th Cir. 1997) ................................................................... 33

*Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876 (6th Cir. 1996) ................................................................... 43

*Lindsey v. Whirlpool Corp.*, 295 Fed. Appx. 758 (6th Cir. 2008) ....... 46

*McConnell v. Swifty Transp., Inc.*, 198 Fed. Appx. 439 (6th Cir. 2006) ................................................................ 24, 25

*McDonald v. Union Camp Corp.*, 898 F.2d 1155 (6th Cir. 1990) ...... 29

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ................ 21

*McQueen v. Beecher Community Schs.*, 433 F.3d 460 (6th Cir. 2006).......................................................................................16

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784 (6th Cir. 2000).................................................................................31, 44

*Newman v. Federal Express Corp.*, 266 F.3d 401 (6th Cir. 2001).................................................................................30, 31

*Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000) ..............47

*Pharakhone v. Nissan N. America, Inc.*, 324 F.3d 405 (6th Cir. 2003)........................................................................................50

*Pittman v.Cuyahoga Valley Career Ctr.*, 451 F. Supp. 2d 905 (N.D. Ohio 2006)...........................................................20, 25, 35

*Plona v. United Parcel Service, Inc.*, 558 F.3d 478 (6th Cir. 2009)........................................................................................36

*Preston v. Clayton Homes, Inc.,* 167 Fed. Appx. 488 (6th Cir. 2006)........................................................................................35

*Randolph v.  Ohio Department of Youth Services*, 453 F.3d 724 (6th Cir. 2006) ....................................................................45, 46

*Reeves v. Fox TV Network,* 983 F. Supp. 703 (N.D. Ohio 1997) .....33

*Reeves v. Sanderson*, 530 U.S. 133 (2000)....................................29

*Reid v. Sears, Roebuck & Co.* 790 F.2d at 453 (6th Cir. 1986)..27, 32

*Soletro v. National Federation of Independent Bus.*, 130 F. Supp. 2d 906 (N.D. Ohio 2000)...................................................27

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993) .......24, 25, 29

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981)..................................................................................22

*United States v. Reed*, 167 F.3d 984 (6th Cir. 1999)................. 16, 50

*Weigold v. ABC Appliance Co.,* 105 Fed. Appx. 702 (6th Cir. 2004)........................................................................................43

*Wixson v. Dowagiac Nursing Home*, 87 F.3d 164 (6th Cir. 1996)........................................................................................39

*Woythal v. Tex-Tenn Corp.*, 112 F.3d 243 (6th Cir. 1997)....27, 32, 35

## STATE CASES

*Drawl v. Cleveland Ortho. Ctr.*, 668 N.E.2d 924 (Ohio App. 1995)....................................................................................39, 42

*Little Forest Medical Ctr. v. Ohio Civil Rights Commission*, 61 Ohio St. 3d 607 (1991)..................................................................17

## RULE, REGULATIONS AND STATUTES

42 U.S.C. § 1981 ...............................................................2, 3, 16, 17

29 C.F.R. § 825.216(a) ............................................................5, 49

29 U.S.C. § 2614(a)..................................................................5, 49

O.R.C. § 4112............................................................2, 3, 5, 16, 17

## <u>ORAL ARGUMENT IS NOT WARRANTED</u>

Defendants-Appellees, Sodexho and Mr. Savanick, state that no oral argument is warranted in this case.  The material facts of record are neither voluminous nor complex, and there is no ambiguity in the controlling law.  The parties submitted thorough briefing regarding their positions, and the district court's Opinion and Order clearly and precisely stated the factual and legal basis for its decision.  Therefore, Sodexo and Mr. Savanick submit that oral argument would not significantly aid or provide value to this Court's decisional process.

## STATEMENT OF THE ISSUES

I.    In the absence of direct comments or circumstantial evidence indicative of racial animus, Sodexho and Mr. Savanick were entitled to judgment as a matter of law on Ms. Thompson's claim of race discrimination in violation of O.R.C. § 4112 and 42 U.S.C. § 1981 stemming from her separation from employment at UH.

II.   In the absence of facts depicting an environment permeated with discriminatory animus, Sodexho and Mr. Savanick were entitled to judgment as a matter of law on Ms. Thompson's claim that Sodexho and Mr. Savanick subjected her to a hostile work environment in violation of O.R.C. § 4112.

III.  Absent evidence linking any protected activity by Ms. Thompson to her position elimination, the district court properly granted summary judgment to Sodexho and Mr. Savanick on her O.R.C. § 4112 retaliation claim.

IV.   The district court properly granted summary judgment to Sodexho and Mr. Savanick on Ms. Thompson's FMLA interference claim because the proposals to eliminate her position occurred well before she took any leave and were made by those who lacked knowledge of her FMLA status.

## STATEMENT OF THE CASE

On March 16, 2007, Plaintiff-Appellant Aleather Thompson filed her Complaint against Defendant-Appellee UHHS Richmond Heights Hospital, Inc. ("UH") alleging race discrimination in violation of O.R.C. § 4112.02 and 42 U.S.C. § 1981, retaliation for reporting alleged race discrimination in violation of O.R.C. § 4112, and interference with her right to take leave under the Family and Medical Leave Act ("FMLA"). (R. 1, Complaint.) Ms. Thompson later amended her Complaint to add Sodexho and Mr. Savanick as additional defendants, raising virtually the same claims as those alleged against UH. (R. 16, Am. Compl.)

On July 3, 2008, Sodexho and Mr. Savanick filed a motion for summary judgment demonstrating that Ms. Thompson failed to produce evidence to support either her *prima facie* case or prove pretext for her race-related claims, that she failed to prove retaliation, and that she failed to prove the Defendants interfered with her FMLA rights. (R. 47, Motion for Summary Judgment ("Sodexho MSJ").)[1] UH also filed a summary judgment motion that day. (R. 46, UH's Motion for Summary Judgment ("UH MSJ").)

---

[1] While the Motion for Summary Judgment was filed on behalf of Sodexho and Mr. Savanick, for the sake of brevity it will be referred to only as "Sodexho MSJ" in this Brief.

On August 4, 2008, Ms. Thompson submitted her brief opposing both summary judgment motions in one consolidated brief.  (R. 55, Opposition to Motion for Summary Judgment ("Opp.").)

Sodexho and Mr. Savanick filed their reply brief in further support of their motion for summary judgment.  (R. 58, Sodexho's Reply.)  That same day, UH filed its reply brief as well.  (R. 57, UH's Reply.)

On October 14, 2008, the district court issued a memorandum opinion granting summary judgment in favor of Sodexho and Mr. Savanick, as well as UH.  (R. 61, Memorandum Opinion and Order ("Opin.").)  Thereafter, Ms. Thompson filed a notice of appeal.  (R. 63, Notice of Appeal.)  On March 31, 2009, Ms. Thompson filed her appellate brief ("Appellant's Br."), in which she presents the same evidence considered and rejected by the district court.

## STATEMENT OF THE FACTS

### I.    The Parties.

Sodexho provides management services in a number of industries, including nutritional services management for hospitals.  (R. 47, Sodexho MSJ at Ex. A, Declaration of Robert Bucciarelli ("Bucciarelli Dec."), ¶2.)[2]  In the hospital setting, Sodexho manages food production and supervises the

---

[2]  Sodexho filed the Declaration of Robert Bucciarelli under seal pursuant to the Court's July 27, 2007 Stipulated Protective Order. (*See* R. 48.) Sodexho has separately delivered a copy of the filed document to the Clerk for filing pursuant to the Court's procedure for sealed documents.

work of the kitchen staff, who typically are employees of the hospital, not Sodexho. (*Id.* at ¶12.) Sodexho tailors its services to meet the food production needs of each individual hospital it serves. (*Id.* at ¶2.)

Steve Savanick has been employed by Sodexho since 1995. (R. 47, Sodexho MSJ at Ex. B (Savanick Dep.) at 9.) He began to work for Sodexho in UH's Nutritional Services Department ("NSD") in June 2005 as an Executive Chef, reporting to Mary Henefeld, then Sodexho General Manager ("GM").[3] (*Id.* at 23-24.) He held this position at the time Ms. Thompson left UH in November 2005. (*Id.* at 24.)

As an Executive Chef, Mr. Savanick was responsible for menu planning, food purchasing, employee scheduling, and food production. (*Id.* at 9.) He did not have the authority to make hiring or firing decisions for UH's employees. (R. 47, Sodexho MSJ at Ex. B (Savanick Dep.) at 145; Ex. F (Newman Dep.) at 81-82; Ex. E (Bennett Dep.) at 39-40.) While Mr. Savanick participated in discussions regarding UH'S staffing for the NSD and the elimination of Ms. Thompson's position, as an Executive Chef he lacked

---

[3] During the timeframe relevant to this litigation, Ms. Henefeld shared her time between UH and another UHHS community hospital. (R. 47, Sodexho MSJ at Ex. C (Henefeld Dep.) at 13.) In the summer 2006, after a decision to install a full-time GM at UH, Sodexho promoted Mr. Savanick to GM, the position he currently holds. (R. 47, Sodexho MSJ at Ex. B (Savanick Dep.) at 24.)

decision-making authority. (R. 47, Sodexho MSJ at Ex. C (Henefeld Dep.) at 53.)

UH is one of many community hospitals in the University Hospitals Health System ("UHHS"). As part of its patient services, UH's NSD provides in-room meals to patients and cafeteria meal service to UH staff, patients, and visitors.

Plaintiff Aleather Thompson worked as an NSD Supervisor for UH until it eliminated her position effective November 1, 2005. (R. 47, Sodexho MSJ at Ex. D (Thompson Dep.) at 88-89.) During all periods relevant to this matter, Ms. Thompson had been employed only by UH, not Sodexho.[4]

## II.    **Sodexho's Contract for Services at UH**.

In 2004, Sodexho sought the opportunity to provide food service management to the main campus of UHHS and its community hospitals. (R. 47, Sodexho MSJ at Ex. A (Bucciarelli Dec.), ¶4.) In May 2004, Sodexho conducted a site visit of UH's NSD to evaluate its needs and to gather information to prepare a service proposal. (Id. at ¶¶4, 5.) Sodexho District Manager Bob Bucciarelli participated in the site survey of UH, but neither Ms. Henefeld nor Mr. Savanick played any role in that site survey. (Id.)

---

[4] Sodexho briefly employed Ms. Thompson in the late 1990s, when it previously managed the food service operations at UH. She is listed as eligible for rehire with Sodexho in its employment records. (R. 47, Sodexho MSJ at Ex. G (Scheafnocker Dec.), ¶6.)

Soon after, Sodexho prepared a Costing Analysis for the entire UHHS, which included its proposal for services that Sodexho could render and the staffing model it suggested for the UH at issue here, Richmond Heights Hospital. (*Id.* at ¶¶6, 7 and Ex. A.)  In it, Sodexho suggested a reduction in UH's employee hours for the NSD staff. (*Id.* at ¶7.)  It also proposed that UH employ no supervisors or managers; proposing instead, that Sodexho employ a half-time GM and full-time Chef or Manager to operate the NSD. (*Id.* at ¶¶8-9.)  Sodexho's 2004 proposal did not anticipate retaining UH's NSD Supervisor, the job held by Ms. Thompson. (*Id.* at ¶¶8, 13.)  When Sodexho presented its proposal in May 2004, Mr. Bucciarelli had not met Ms. Thompson, did not know her race, and did not know her FMLA status. (*Id.* at ¶5.)

As part of its proposals, Sodexho planned to institute At-Your-Request ("AYR") food service for UH patients. (*Id.* at ¶10.)  The AYR program differed from any food service previously provided by UH's NSD. (*Id.*)  Specifically, the AYR program changed patient in-room meal service from patients selecting meals based on pre-set menus delivered in mass at pre-set delivery times to a system allowing patients to order from a menu for immediate delivery at any time they wished, much like hotel room-service. (*Id.* at ¶10.)  UH later accepted Sodexho's proposals, including its recommendation to eliminate the NSD supervisor position. (R. 47, Sodexho MSJ at Ex. E (Bennett Dep.) at 115-

116.)  In fact, Sodexho's AYR program factored heavily in favor of Sodexho obtaining the UH service contract. (*Id.* at 110.)

## III.  **Sodexho Starts Work at UH.**

Sodexho began servicing UH in June 2005, initially assigning Ms. Henefeld as the part-time GM.  (R. 47, Sodexho MSJ at Ex. A (Bucciarelli Dec.), ¶12; Ex. B (Savanick Dep.) at 19.)  As Sodexho's GM, Ms. Henefeld had responsibility for supervising the NSD operations staff, including supervising the Sodexho and UH employees, ensuring budgetary compliance, and conducting performance evaluations.    She reported to Sodexho, to UH's human resources group and to Kris Bennett, UH's Director of Finance and Support Services.  (*Id.* at Ex. C (Henefeld Dep.) at 28-30.)    Although Ms. Henefeld divided her time between UH and another UHHS community hospital, each day she was at UH she walked UH's NSD area to talk to the UH employees and address any issues.  (*Id.* at 29-30.)  If an issue arose during her absence, NSD employees were instructed to advise Mr. Savanick about the issue; he either handled the issue directly or funneled the issue to Ms. Henefeld.  (*Id.* at Ex. B (Savanick Dep.) at 39-40.)

Sodexho's contract with UH required that it supervise the NSD operations, including UH's NSD staff.  But Sodexho had no authority to hire, discharge or discipline the NSD staff without UH's direct involvement and consent.  (*Id.* at Ex. E (Bennett Dep.) at 131-132.)  UH, not Sodexho, also had

8

responsibility for processing and making decisions related to employee leaves, like medical leave.  (*Id.* at 140; Ex. F (Newman Dep.) at 58-59.)  Likewise, UH retained full responsibility for benefit administration for its employees.  (*Id.* at Ex. E (Bennett Dep.) at 131-132.)[5]

## IV.    **Ms. Thompson's Employment at UH.**

Ms. Thompson worked for UH in its NSD until November 1, 2005 when her position as NSD Supervisor was eliminated for business reasons.  Her job duties had included opening the kitchen, recording temperatures, coordinating the NSD staff schedule, supervising the NSD staff, inventory, ordering, and catering (R. 47, Sodexho MSJ at Ex. D (Thompson Dep.) at 119; Ex. C (Henefeld Dep.) at 25-26.)

Aramark, another food service provider, had managed the NSD and Ms. Thompson until the end of May 2005.  (*Id.* at Ex. E (Bennett Dep.) at 42.)  During Aramark's tenure, Ms. Thompson first worked with Aramark GM Eric Kotheimer.  (*Id.* at 20-21; 44-45.)  She made virtually the same allegations against Mr. Kotheimer that she made against Mr. Savanick in her Amended Complaint.  Specifically, she complained to UH that Mr. Kotheimer treated NSD employees adversely based on their race, he encouraged discipline of black employees more than white, he assigned easier tasks to white employees and

---

[5]    From 2004 until 2007, UH employee Mary Hendricks, an HR Generalist, had responsibility for processing salary changes, and processing FMLA requests.  (*Id.* at 67-69.)

more difficult tasks to black employees, that he did not respect her, *and that he hung a Civil War poster depicting slaves near a Martin Luther King Day display.* (*Compare Id.* at 42, 47-48, 53 and Appellant's Br. at 8 *with* R. 16, Am. Compl. at ¶¶ 28-31.)    Because of her complaint about Mr. Kotheimer, UH asked Aramark to remove him from his position.  UH had that right under the service contract it had with Aramark, and later had the same right under its contract with Sodexho. (*Id.* at Ex. E (Bennett Dep.) at 42.)

Ms. Thompson also complained about Mr. Kotheimer's replacement, Aramark GM Jim Johnston. (*Id.* at Ex. F (Newman Dep.) at 67-69, Ex. 16.) That is, in the summer of 2004, Ms. Thompson told UH that Mr. Johnston reduced staff hours, speculating that the action could be racially motivated, and made many of the same types of complaints against Mr. Johnston that she had made against Mr. Kotheimer and that she makes in this case against Mr. Savanick. (*Id.;* Appellant's Br. at 8-9; R. 55, Opp. at 6.)    Following her allegation against Mr. Johnston, UH conducted an investigation to determine whether there was unfairness in the job duty distribution within the NSD. (R. 47, Sodexho MSJ at Ex. F (Newman Dep.) at 69, 72-75, 80-81.) UH concluded that there was at most a perceived unfairness; nonetheless, it implemented a plan to divide and/or redistribute responsibilities and to improve NSD communication. (*Id.* at 88-90.)

While she worked at UH along side Sodexho employees, there is no record Ms. Thompson made any complaints, save her complaint to Ms. Henefeld that Mr. Savanick lacked effective communication skills and did not help in the kitchen. (*Id.* at Ex. C (Henefeld Dep.) at 67-68, Ex. 3.) According to former UH HR manager Martha Newman, no UH employees complained to her about Mr. Savanick.[6] In fact, Ms. Newman testified that employees "loved [Mr. Savanick]" and that he was "in tune" with UH employees. (R. 47, Sodexho MSJ at Ex. F (Newman Dep.) at 91-93.) If a UH employee had complained about Mr. Savanick, Ms. Newman would have been advised of the complaint, even if not made directly to her. (*Id.*)

**V.    Ms. Thompson's NSD Position is Eliminated.**

In preparing for the change to AYR in August 2005, Ms. Henefeld made recommendations to Mr. Bennett that would serve to "better meet the needs of our patients, visitors and Hospital staff." (R. 47, Sodexho MSJ at Ex. C (Henefeld Dep.) at 55-57, Ex. 4.) Among other things, she recommended implementing the initial 2004 proposal to eliminate Ms. Thompson's job as NSD supervisor and also recommended the elimination of the kiosk hostess job held by a white UH employee, Sandy Stull. (*Id.* at 56, 62, Ex. 4.)[7] From the

---

[6] Ms. Newman was HR Manager for UH from January 2004 to October 2006. (R. 47, Sodexho MSJ at Ex. F (Newman Dep.) at 10-11.)
[7] Mr. Savanick had discussed the recommendations with Ms. Henefeld, but did not make the decision. (*Id.* at Ex. C (Henefeld Dep.) at 53.)

time she began to manage the UH NSD, Ms. Henefeld assumed that Ms. Thompson's job would be eliminated at some point because it was neither part of the original proposal to UH, nor part of the budget. (*Id.* at 47; Ex. A (Bucciarelli Dec.), ¶¶8,13.) UH had the discretion to accept or reject Sodexho's recommendation to eliminate these jobs because Ms. Thompson and Ms. Stull were its employees, not Sodexho's. (*Id.* at Ex. E (Bennett Dep.) at 114-115.) Ultimately, UH decided to eliminate both jobs. (*Id.* at 116; Ex. F (Newman Dep.) at 107-108.)

In that same proposal, Ms. Henefeld also recommended that UH allow Sodexho to hire a Sodexho Chef I to oversee the AYR food production. (*Id.* at Ex. C (Henefeld Dep.) at 50, 63-64.) Sodexho received UH approval and posted this position. Ms. Thompson did not apply. (*Id.* at Ex. D (Thompson Dep.) at 117.) Sodexho enlisted its recruitment department to pre-screen applicants and to forward the most promising candidates to Ms. Henefeld to review and interview the best candidates. (*Id.* at Ex. C (Henefeld Dep.) at 64.) Sodexho completed its hiring process in early October 2005 and offered the position to Jack Hart, a white man. (*Id.* at Ex. G (Scheafnocker Dec.), ¶5.)

Sodexho expected Mr. Hart to train and supervise cooks from a production manager perspective, to implement the AYR program and to ensure proper operation of that program. (*Id.* at Ex. C (Henefeld Dep.) at 57-58; Ex. B, (Savanick Dep.) at 158-159.) In addition, Mr. Hart became responsible for

standardizing food quality, ensuring uniform recipe compliance for food consistency, cooking in the cafeteria, collecting cash and some purchasing. (*Id.* at Ex. C (Henefeld Dep.) at 57-58.)    Unlike Ms. Thompson's NSD supervisor position, Mr. Hart had no responsibility to schedule, discipline or evaluate the NSD staff employed by UH.  (*Compare id.* at Ex. D (Thompson Dep.) at 100, 126-127, 132-133, 227 *with* Ex. C (Henefeld Dep.) at 57-58.) Those responsibilities remained with the Sodexho GM or Executive Chef.

## SUMMARY OF ARGUMENT

After reviewing and considering the evidence before it, the district court determined that the unrefuted, admissible evidence mandated but one conclusion: Sodexho and Mr. Savanick were entitled to judgment as a matter of law on Ms. Thompson's claims for race discrimination, harassment, and retaliation, as well as her FMLA interference claim.  It reached this conclusion because Ms. Thompson failed to identify any facts sufficient to prove her claims.  The undisputed facts presented to the court below established that neither Sodexho nor Mr. Savanick took any adverse action against or engaged in harassing conduct toward Ms. Thompson because of her race, and that Ms. Thompson's position would have been eliminated regardless of her FMLA leave status.

Ms. Thompson continues to present the same "evidence" on appeal, but asks this Court to reach a different conclusion.    Defendants-Appellees

respectfully maintain that the lower court's decision must be upheld because there is no material dispute of fact, and Defendants are entitled to summary judgment as a matter of law.

In particular, Ms. Thompson's claims fail because no factual dispute exists as to whether she was replaced by or treated less favorably than a similarly situated employee outside her protected class—she was not. Moreover, no factual dispute exists as to whether Ms. Thompson worked in a hostile environment—she did not. The evidence presented by Ms. Thompson does not establish any harassing conduct because of her race or that alleged harassing conduct directed at others of which she was aware, to the extent it existed, was sufficiently severe or pervasive to permeate her work environment with discriminatory ridicule.

Even if she met these *prima facie* burdens, there is no evidence that Sodexho's legitimate, non-discriminatory business reason for recommending that her job be eliminated is a pretext for race discrimination. Instead, the evidence reflects that Sodexho proposed the elimination as part of a service proposal made to UH to better meet the "needs of the patients, visitors, and Hospital staff." (R. 47, Sodexho MSJ at Ex. C (Henefeld Dep.) at 55-57 and Ex. 4.) The unrebutted evidence further shows that Sodexho made the recommendation to eliminate Ms. Thompson's position well before it ever met her, knew her race, or knew that she took any FMLA leave.

The district court properly granted summary judgment to Sodexho and Mr. Savanick on her retaliation claim because she cannot demonstrate any knowledge of protected activity by Sodexho or Mr. Savanick, or a causal connection between any alleged protected activity and her job elimination. Likewise, Defendants are entitled to judgment as a matter of law on her FMLA interference claim because the unrefuted evidence establishes that her job would have been eliminated even absent any leave.

Significantly, in the district court and this Court, Ms. Thompson relies heavily on uncorroborated affidavits that lack any identifying facts or details and recount events that occurred *after* Ms. Thompson ceased working at UH. As explained herein, even if considered, these affidavits are insufficient to defeat Sodexho and Mr. Savanick's properly supported summary judgment motion because they provide no evidence of disparate treatment, a racially hostile environment, any retaliatory action taken *against her,* or a relationship between her race or medical leave and Sodexho's proposals to UH. Therefore, no genuine issue of fact exists, and the district court properly granted judgment in Defendants' favor on each of Ms. Thompson's claims.

## **ARGUMENT**

### I.    **Standard of Review.**

This Court conducts a *de novo* review of a decision granting summary judgment, drawing all reasonable inferences in favor of the nonmoving party.

*McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 463 (6th Cir. 2006), *citing*

*Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).

## II.    The District Court Properly Granted Summary Judgment on Ms. Thompson's Race Discrimination Claims.

### A.    Ms. Thompson's termination claim fails as a matter of law.

To prevail on her claim that Sodexho and Mr. Savanick terminated her

based on her race in violation of O.R.C. § 4112.02 and 42 U.S.C. § 1981, Ms.

Thompson must establish, among other things, that she was replaced by a

person outside of her protected class.[8]  *Clayton v. Meijer*, 281 F.3d 605, 607

(6th Cir. 2002) (citation omitted); *Braithwaite v. Timken Co.*, 258 F.3d 488, 493

---

[8] The district court also found that Ms. Thompson could not show that the alleged similarly situated white employee, Ms. Stull, received more favorable treatment than her. (R. 61, Opin. at 24.) Ms. Thompson did not address this issue on appeal, and therefore has waived any argument based on the district court's findings relative to this issue. *United States v. Reed*, 167 F.3d 984, 993 (6th Cir. 1999). Moreover, as the district court recognized, Ms. Stull is not a proper comparator to Ms. Thompson because, unlike Ms. Thompson, Ms. Stull's job in the cafeteria food kiosk was entirely different, and she had no supervisory responsibility. (R. 61, Opin. at 24.)

Assuming, *arguendo*, that Ms. Thompson could show that she and Ms. Stull were similarly situated, her claim still fails because there is no dispute that Sodexho and Mr. Savanick treated her the same as Ms. Stull: Ms. Henefeld recommended and UH agreed to eliminate both Ms. Thompson's and Ms. Stull's jobs. (R. 47, Sodexho MSJ at Ex. C (Henefeld Dep.) at 55-57, 62, Ex. 4 and Ex. D (Thompson Dep.) at 104-05.) As such, even if they were similarly situated, Ms. Thompson provided no evidence to conclude that the two women were treated any differently by Sodexho or Mr. Savanick because of their race. (R. 61, Opin. at 24.)

(6th Cir. 2001).[9]  She did not and cannot.

The evidence presented to the district court, and reiterated in the appellate briefs, demonstrates that UH eliminated Ms. Thompson's supervisor position and permitted Sodexho to hire a Sodexho Chef with an entirely distinct focal point: implementing and operating Sodexho's AYR program to increase food quality and better serve UH's patients, staff, and visitors. Based on this evidence, Ms. Thompson failed to establish a *prima facie* disparate treatment claim as a matter of law.

### 1. *Ms. Thompson cannot establish a required element of the* prima facie *case because she was not replaced.*

As the district court concluded based on all the evidence presented, Sodexho did not replace Ms. Thompson. (R. 61, Opin. at 18-19.) Rather, the undisputed evidence shows that Sodexho advised UH that Ms. Thompson's supervisory position should be eliminated, that Sodexho should hire a standard Chef I who would concentrate on food production under the new

---

[9] The elements of a *prima facie* case under O.R.C. § 4112.02 and 42 U.S.C. § 1981 are identical to a Title VII discrimination claim and are analyzed under the same general framework. *See Johnson v. University of Cincinnati*, 215 F.3d 561 (6th Cir. 2000); *Little Forest Med. Ctr. v. Ohio Civil Rights Comm'n*, 61 Ohio St.3d 607, 609 (1991). Although Ms. Thompson attempts to claim she presented direct evidence to the court below (Appellant's Br. at 20), her deposition testimony established that no race-related comments were made to her.  (R. 47, Sodexho MSJ at Ex. D (Thompson Dep.) at 174.)  Thus, her claims must be analyzed under the familiar tripartite burden-shifting approach.

AYR, and that the Chef would not supervise the food service staff as Ms. Thompson had done. (*Id.* at 18-19.)

For the novel AYR program to function properly, Sodexho needed someone to train the NSD cooks and oversee the food production for this completely new method of patient meal service at UH. (*Id.* at Ex. A (Bucciarelli Dec.), ¶¶10, 14-15; Ex. C (Henefeld Dep) at 55-57.) The Sodexho Chef I serves that specific purpose. (*Id.* at Ex. A (Bucciarelli Dec.), ¶15.) Although the Chef I performed some food-related duties similar to those performed by Ms. Thompson as NSD supervisor, fundamental differences dominate the comparison of the two positions.

As NSD Supervisor under the former operation, Ms. Thompson's job duties required her to open the kitchen, record temperatures, coordinate the NSD staff schedule, supervise the NSD staff, inventory, ordering, and catering. (*Id.* at Ex. D (Thompson Dep.) at 119; Ex. C (Henefeld Dep.) at 25-26.) Contrast this with the primary focus of the Chef I position filled by Mr. Hart: to make "sure the cooks did their job and [raised] the level of service and the food in the hospital . . . [he] implement[ed] programs [like] At Your Request. . . . He was required to raise the level of food being put out by our staff," with tasks like ordering and inventory being a lesser focus. (*Id.* at Ex. B (Savanick Dep.) at 62.) Ms. Thompson had no similar responsibility as NSD Supervisor because UH had never had an AYR patient meal service. (*Id.* at

Ex. D (Thompson Dep.) at 218.)[10]  Thus, the district court correctly concluded

that the unrefuted evidence demonstrates that Mr. Hart did not "replace" Ms.

Thompson.

Indicative of Ms. Thompson's inexperience with and lack of exposure to

an AYR operation is her attempt to diminish the character and impact of UH's

change to AYR.  (Appellant's Br. at 22; R. 55, Opp. at Ex. A, ¶20 ("the only

real difference from a food production standpoint is that the food would need

to be cooked at different times").)    The uncontroverted evidence

demonstrates that UH's change in food service from banquet-style food

preparation distributed to the patients at a pre-set time to a hotel room service

style represented a significant and substantial change in the NSD operation.

In fact, Mr. Savanick testified that he spent almost an entire year as Executive

Chef preparing UH and the NSD staff for the change to AYR.   (R. 47,

Sodexho MSJ at Ex. B (Savanick Dep.) at 63, 104-05.)  Further, Ms. Henefeld

outlined in the memorandum to UH, where she proposed to eliminate Ms.

Thompson's position, that numerous changes had to be made to ensure

successful implementation of the operational change to AYR, including

eliminating a white employee's (Ms. Stull) position, relocating offices, and

---

[10]  Ms. Thompson had no experience in food service in a setting where
food was prepared in a made-to-order operation similar to a hotel or
restaurant. (Appellant's Br. at 4-6; R. 55, Opp. at Ex. A.)  Similarly, she had
no supervisory experience or responsibility working in an AYR operation. (R.
47, Sodexho MSJ at Ex. D (Thompson Dep.) at 218.)

renovating the cafeteria. (*Id.* at Ex. C (Henefeld Dep.) at Ex. 4.) Additionally, Mr. Bennett testified that Sodexho's AYR program played a role in UH awarding the food service contract to Sodexho instead of Aramark, the incumbent food service provider for UH. (*Id.* at Ex. E (Bennett Dep.) at 110.)

Rather than addressing these undisputed facts in any meaningful way, Ms. Thompson simply overlooks them, stubbornly claiming that Defendants simply posted her position with a different job title. (Appellant's Br. at 22; R. 47, Sodexho MSJ at Ex. D (Thompson Dep.) at 89.)  She makes this assertion without ever having worked in the AYR environment, without knowledge of the Sodexho Chef I's duties, and without knowledge of how the NSD functioned after she left. (*Id.* at 89-92, 119, 219.)  As such, her opinion on this topic, *which she admits she formed solely based on the deposition testimony she heard*, is just that: an opinion that cannot support her appeal. *See Pittman v.Cuyahoga Valley Career Ctr.*, 451 F. Supp. 2d 905, 921 (N.D. Ohio 2006); *Johnson v. McDonald & Co. Sec., Inc.* 982 F. Supp. 483, 488 (N.D. Ohio 1997); (R. 47, Sodexho MSJ at Ex. D (Thompson Dep.) at 93 (admitting that her only knowledge of Sodexho's operation at UH after her termination was "because [she] sat at the depositions and heard everything [Sodexho and UH deponents] said").)

Based on the evidence before it, the district court properly concluded that Ms. Thompson failed to prove that she was replaced.  In reaching its

conclusion, the district court explained that "Ms. Thompson's position was a general, supervisory position, with responsibilities involving employee scheduling, discipline, and evaluation. The focus of the Chef I position was food production, food quality, and the implementation of the At-Your-Request program." (R. 61, Opin. at 19; *see also* R. 47, Sodexho MSJ at 14-15.) Because Ms. Thompson failed to produce evidence upon which a reasonable person could conclude that the Chef I position filled by Mr. Hart replaced her former NSD supervisor position, she failed to prove this element of her *prima facie* case.

Significantly, even if the Sodexho Chef I position were identical to her former job, which the evidence shows it is not, her claim is fatal nonetheless because she never applied for the Sodexho job. (R. 47, Sodexho MSJ at Ex. D (Thompson Dep.) at 116-117); *see e.g. McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973) (generally, employee must apply for job following employer's procedures); *Christopher v. Stouder Mem. Hosp.*, 936 F.2d 870, 877-78 (6th Cir. 1991). Nor has she sought any other job with Sodexho or UH, even though she is aware of Sodexho's posting procedures.[11]  (R. 47, Sodexho MSJ at Ex. D (Thompson Dep.) at 116.)

---

[11]    Neither Sodexho nor UH had a duty to find a new role for Ms. Thompson simply because UH eliminated her current position. (R. 61, Opin. at 24). Nevertheless, the evidence reflects that UH searched open positions in its health system to find an alternative job for Ms. Thompson, but no

### 2. Sodexho articulated a legitimate business reason for recommending the elimination of Ms. Thompson's position, and Ms. Thompson fails to prove pretext.

Even if she had met her *prima facie* burden, the district court properly awarded summary judgment to Sodexho and Mr. Savanick because Ms. Thompson produced insufficient evidence to prove Sodexho's legitimate, non-discriminatory reason for recommending her separation from UH was a pretext for race discrimination.[12] *See Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981). Defendants "need not prove a nondiscriminatory reason for the allegedly discriminatory action, but need merely articulate a valid rationale." *Hartsel v. Keys,* 87 F.3d 795, 800 (6th Cir. 1996); *see also Fite v. First Tenn. Prod. Credit Ass'n.,* 861 F.2d 884, 891 (6th Cir. 1988), *overruled on other grounds by Davis v. Mutual Life Ins. Co.,* 6 F.3d 367, 381 (6th Cir. 1998) ("The law is clear that '[a] business decision need not be good or even wise. It simply has to be nondiscriminatory . . . .'").

---

positions were available. (R. 47, Sodexho MSJ at Ex. F (Newman Dep.) at 111-112.) Moreover, following the elimination, Ms. Newman encouraged Ms. Thompson to seek an alternate job in the health system, but she did not. (*Id.* at 112-113 and Ex. D (Thompson Dep.) at 88, 95, 116-117.)

[12] The unrefuted evidence before the trial court reflected that Mr. Savanick did not make the decision to eliminate Ms. Thompson's position. (*Id.* at Ex. E (Bennett Dep.) at 108-109, 124-125; Ex. C (Henefeld Dep.) at 51-53 ("We decided that the position should be eliminated, but it's ultimately my responsibility"); Ex. B (Savanick Dep.) at 143 (explaining he only learned that UH decided to eliminate Ms. Thompson's job "the day, the minute before it happened").)

a. Sodexho recommended the elimination of Ms. Thompson's position for legitimate, non-discriminatory business reasons.

The proposal to eliminate Ms. Thompson's position was made long before anyone at Sodexho even knew of or met her, and before Sodexho even contracted with UH to provide its food service. (R. 47, Sodexho MSJ at 3-4.)  In 2004, Sodexho District Manager Bob Bucciarelli, among others, made a proposal to UH regarding how it could better manage its food service operation for its patients, staff, and visitors. (*Id.* at Ex. A (Bucciarelli Dec.), ¶¶4-6.) The proposal envisioned that the only managers carrying out the food service operation would be Sodexho employees, a half-time General Manager and a full-time Chef or Manager. (*Id.* at ¶¶7-9.)  That management structure is consistent with Sodexho's typical structure. (*Id.* at ¶8.)  Sodexho later recommended hiring a Chef I to oversee its AYR service.  Sodexho made these recommendations to improve the kitchen operations in alignment with Sodexho's usual operating practices, to improve food quality and consistency, to meet UH's vision for the NSD, and to properly budget the food service operation.  (R. 47, Sodexho MSJ at 15 and Ex. A (Bucciarelli Dec.), ¶¶4, 7-11; Ex. D (Thompson Dep.) at 105-06.)  Ms. Thompson acknowledges Sodexho had these goals when it succeeded Aramark as the UH food service provider.  (*Id.* at 105-112.)

Once Sodexho began providing services at UH, Ms. Henefeld followed that initial recommendation by proposing to UH that they make certain changes, including eliminating Ms. Thompson's and Ms. Stull's positions. (*Id.* at Ex. A (Bucciarelli Dec.), ¶¶ 7-8, 14-15; Ex. C (Henefeld Dep.) at 55-57, 62, Ex. 4)  Ms. Henefeld explained that the new operations required more cook training and production improvements, not a department supervisor who performed some of the same tasks as the Sodexho Executive Chef. (*Id.* at 55-57.)

UH accepted Sodexho's recommendations, and eliminated Ms. Thompson's job effective November 1, 2005. (*Id.* at Ex. E (Bennett Dep.) at 115-116 (Bennett stated "absolutely" when asked whether UH could have rejected Sodexho's proposal to eliminate the supervisor job).)

b. Ms. Thompson cannot demonstrate pretext.

Because Sodexho met its burden of production, Ms. Thompson must show that its reasons are false and merely a pretext for intentional discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510-11 (1993). "Pretext is more than a mistake on the part of the employer; it is a phony excuse." *Hudson v. Chi. Trans. Auth.,* 375 F.3d 552, 561 (7th Cir. 2004). Proving pretext requires a showing "that the proffered reason 1) had no basis in fact, 2) did not actually motivate [Sodexho's conduct], or 3) was insufficient to warrant the challenged conduct." *McConnell v. Swifty Transp.,*

*Inc.*, 198 Fed. Appx. 439 (6th Cir. 2006); *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).    Thus, to prove pretext, Ms. Thompson must produce evidence proving "both that the reason was false, and that discrimination was the real reason." *Pittman*, 451 F. Supp. 2d at 917, *citing St. Mary's Honor Ctr.,* 509 U.S. at 519.  She offered no such evidence in the district court, and failed to point out any such evidence to this Court.

In her attempt to demonstrate pretext, Ms. Thompson relies on the following: (1) her own speculation that UH's elimination of her position did not stem from Sodexho's initial service proposal to UH, but from a discriminatory "plan" created by Mr. Savanick and Ms. Henefeld (Appellant's Brf. at 22; R. 55, Opp. at 10, 17-18 (making the bald allegations that "Ms. Henefeld and Mr. Savanick, in fact, planned to terminate Ms. Thompson.  To accomplish this objective, they formulated a plan . . . ."); and (2) vague allegations of mistreatment by Mr. Savanick.  Not only are these simple conjectures that courts routinely disregard for summary judgment purposes, but also, her conclusory, self-serving, and unsupported statements are contradicted by the admissible record evidence.

Contrary to Ms. Thompson's allegations of a discriminatory plan hatched by Ms. Henefeld and Mr. Savanick to eliminate her position, the record demonstrates that (1) Sodexho initially proposed eliminating her position in 2004 (R. 47, Sodexho MSJ at Ex. A (Bucciarelli Dec.), ¶¶8, 13); (2)

25

Ms. Henefeld recommended the position elimination in August 2005 to prepare for the change to AYR and to "better meet the needs of our patients, visitors and Hospital staff" (*Id.* at Ex. C (Henefeld Dep.) at 55-57, Ex. 4); and (3) Mr. Savanick did not terminate Ms. Thompson or even directly recommend her position elimination. (*Id.* at Ex. C (Henefeld Dep.) at 53; Ex. E (Bennett Dep.) at 140.)

Most telling, the claim that Ms. Henefeld and Mr. Savanick devised a discriminatory plot only surfaced from Ms. Thompson in response to summary judgment motions. For instance, in her Opposition Brief, she claimed discriminatory treatment by Ms. Henefeld toward her (*e.g.,* planning to terminate her (R. 55, Opp. at 10), giving her an undeserved poor evaluation (*Id.* at 18) and contriving performance issues and complaints by other employees because of her race (*Id.* at 18). (*See also* Appellant's Br. at 12-13 (making the same allegations on appeal.).) Those allegations are wholly inconsistent with and directly contradictory to her prior sworn deposition testimony that she had no reason to believe that Ms. Henefeld treated her differently because of her race. (R. 47, Sodexho MSJ at Ex. D (Thompson Dep.) at 163, 263.) She had testified:

> Q:    "Do you think Mary Henefeld treated you any differently . . . based on your race?"
>
> A:    "She didn't.  No, she was fine."

(*Id.*)

The district court properly rejected this unsupported speculation of a plot to accomplish discrimination as insufficient to prove pretext. (R. 61, Opin. at 21);[13] *Soletro v. National Fed'n of Indep. Bus.*, 130 F. Supp. 2d 906, 910 (N.D. Ohio 2000), *citing Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (subsequent contradictory allegations cannot support pretext and do not create a genuine issue of fact); *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997) (Plaintiff's "[m]ere personal belief[s], conjecture and speculation are insufficient to support an inference of [race] discrimination.") (internal quotation and citation omitted.)  The district court found: "There is no evidence upon which a reasonable person could find that the department restructuring proposed by Sodexho was not the true reason for elimination [of] the Food Production Supervisor position, and no evidence that the position was eliminated as a result of discriminatory animus toward Ms. Thompson." (R. 61, Opin. at 20.)

Additionally, the district court properly determined that Sodexho's or UH's failure to follow precisely each recommendation in the 2004 proposal did not constitute proof that the proposal did not motivate them or that they did not rely on it as the basis for the elimination. (R. 61, Opin. at 21.)  As the

---

[13] While the court did not remark about this contradiction specifically, it did generally state that Ms. Thompson's bare speculation as to Mr. Savanick's motives fails to establish discriminatory animus on his part. (*Id.*)

court pointed out, Ms. Thompson identified no facts from which it could reasonably infer that Sodexho's lack of absolute adherence to the proposal had any relation to a discriminatory animus. (*Id.* at 21.) The court properly, albeit implicitly, rejected her assertion that "Mr. Bennett's testimony establishes that it was Ms. Henefeld's and Mr. Savanick's idea to eliminate the Food Production Supervisor position . . . and not the so-called red book." (R. 55, Opp. at 18; Appellant's Br. at 22.) The record evidence shows that Mr. Bennett offered no such testimony, but instead testified that he received the recommendation from Ms. Henefeld's proposal; he never testified that Sodexho's decision lacked a foundation in the red book, Sodexho's initial service proposal to UH. (R. 47, Sodexho MSJ at Ex. E (Bennett Dep.) at 112-14.) Thus, Ms. Thompson's misstatement of Mr. Bennett's testimony does not create an issue of fact related to the origins of the idea to eliminate her position. The uncontroverted evidence established the non-discriminatory basis and background for the position elimination. (*Id.* at Ex. A (Bucciarelli Dec.), ¶¶7-9, 13-15.)

As part of its pretext analysis, the district court also appropriately rejected Ms. Thompson's reliance on alleged mistreatment by Mr. Savanick during her employment and his allegedly calling her a "troublemaker" *after* her termination. (R. 61, Opin. at 21-22; *see also* Appellant's Br. at 22 (claiming that "Mr. Savanick treated [her] disrespectfully and poorly, found fault with her

constantly, and undermined her authority with the other employees [which] raises a strong inference that Defendant's proffered reasons are false.").) As the district court held: "Simply put, while Ms. Thompson may have felt Mr. Savanick's treatment of her, or her termination, was unwarranted, there is nothing which links that treatment to a discriminatory motive. The evidence presented, viewed in its totality, fails to rebut the legitimate, non-discriminatory reason proffered by Defendants for eliminating the position." (R. 61, Opin. at 21).

In essence, what Ms. Thompson proposes is for the Court to take on the role of super-HR manager in reviewing Sodexho's business decision. (Appellant's Br. at 16 (claiming that she was qualified for the new Chef I position and questioning whether "such a new position was needed at all").) Courts routinely reject this proposal. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990) ("the aim is not to review bad business decisions, or question the soundness of an employer's judgment"). It is neither Ms. Thompson's nor this Court's role to determine the necessity of eliminating or retaining her position; the Court's exclusive role is to determine whether Sodexho and Mr. Savanick took any action based on a discriminatory reason. *See Reeves v. Sanderson*, 530 U.S. 133, 147 (2000), *quoting St. Mary's Honor Ctr.*, 509 U.S. at 524 ("[t]he ultimate question is whether the employer intentionally discriminated. . . .").

29

Based on the undisputed evidence before the district court, which has been reiterated to this Court, there is no basis upon which a reasonable person could conclude that Sodexho or Mr. Savanick were not truly motivated by the proffered reason but instead by a "discriminatory animus [that drove their] determination." *Grace v. USCAR*, 521 F.3d 655, 677-78 (6th Cir. 2008). Accordingly, the district court's award of summary judgment in favor of Sodexho and Mr. Savanick should be affirmed.

**B.    Ms. Thompson's disparate treatment claim fails as a matter of law.[14]**

Although Ms. Thompson makes many assertions related to adverse treatment she claims to have received at the hands of Sodexho and Mr. Savanick, as the district court aptly recognizes, she came forward with "very few examples to support these assertions."[15] (R. 61, Opin. at 22.) Moreover, the examples she provided lacked sufficient detail, were speculative, and did not constitute an adverse employment action against her. (*Id.*) Because she

---

[14] The elimination decision has been fully briefed in the foregoing section. This section centers only around the alleged adverse actions that Ms. Thompson complains were directed towards her during her employment with UH after Sodexho took over the food service contract. (Appellant's Br. at 20.)

[15] The same *prima facie* analysis for a termination decision applies to other types of adverse treatment. *Newman v. Federal Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001) (elements are: 1) member of protected class; 2) qualified for the job; 3) experienced an adverse employment action; and 4) was treated differently than a similarly situated employee outside the protected class).

fails to identify any facts to support her case, her disparate treatment claim

cannot survive summary judgment.

At the district court level, and here, Ms. Thompson claims that:

- Under Mr. Savanick's supervision, there was an unequal allocation of jobs between blacks and whites;
- Mr. Savanick did not permit her to evaluate or discipline white employees;
- Mr. Savanick did not communicate with her and picked on her; and
- Mr. Savanick *intended* to give her a poor evaluation rating, but increased it after "someone" complimented her.[16]

(Appellant's Br. at 11-12, 20, 22; R. 55, Opp. at 7-9.)

In reviewing these assertions, the district court concluded that they fail

to establish a disparate treatment claim based on her race. (R. 61, Opin. at

23.)   The court explained that her "subjective belief that Mr. Savanick's

opinion of her or his behavior toward her was based on her race does not

establish that she was treated differently than other, similarly situated, non-

---

[16] She claims that Mr. Savanick *intended* to give her a poor evaluation of 1.2 in early August 2005. (Appellant Br. at 12; R. 55, Opp. at 9.)  She provides no citation for this claim. (*See id.*)  In fact, the only document she produced related to this claim is an unsigned, undated evaluation form, which she claims was prepared by Mr. Savanick, that has a rating of 2.2, not 1.2. (*Id.*)  That evaluation is consistent with the "above-satisfactory" evaluations she received from her former Aramark managers. (*Id.* at 3-4 (2.2 in 2002 and 2.1 in 2004).)  Ms. Thompson cannot demonstrate discriminatory treatment based on a supposed evaluation that was never even given to her and that did not result in a change in her employment status. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 789 (6th Cir. 2000) (evaluation not resulting in an adverse employment action such as demotion does not support the *prima facie* burden).

African-American employees."[17]   (*Id.*)   Moreover, she identified no facts to support that black employees received more difficult assignments or that Mr. Savanick *actually* prevented her from evaluating or disciplining white employees.[18]   (*Id.* (noting that Ms. Thompson's "only basis for this claim was the fact that white employees never came to her for discipline, leading her to assume that Mr. Savanick did not send them to her for discipline.")   Without such facts, she made no showing that she experienced any adverse action. (*Id.*)   She has simply presented her unsupported speculations and conclusions, which are insufficient for summary judgment purposes. *Woythal*, 112 F.3d at 247.

Thus, Ms. Thompson could not save her disparate treatment claim, whether it stemmed from her job elimination or from actions taken during her

---

[17] Ms. Thompson's allegations regarding Mr. Savanick's alleged mistreatment are discussed in detail *infra* at page 31, 34-35.

[18] Ms. Thompson (and her former co-worker Ms. Bogan) opine, without any factual basis to support their opinions, that Mr. Savanick evaluated and disciplined the white employees, but restricted Ms. Thompson from doing so. (Appellant's Br. at 10; R. 55, Opp. at 7, Ex. B (Bogan Aff.), ¶14.)   However, Ms. Thompson contradicted this claim during her deposition when she (1) responded "I have no idea" to questioning whether Savanick disciplined any white employees (R. 47, Sodexho MSJ at Ex. D (Thompson Dep.) at 148); and (2) admitted that she disciplined at least one white employee while Mr. Savanick worked in the NSD with her (*Id.* at 243 (testifying that Mr. Savanick disciplined a white employee at her request: "And the only other one that I did . . . as a matter of fact, I did write-up and give it to Steve and Steve went over it with her was Judy," who is white).)   These allegations, therefore, should be excluded from consideration as directly contradictory to her deposition testimony. *Reid*, 790 F.2d at 460.

work at UH.   Accordingly, the district court Order entering judgment for Sodexho and Mr. Savanick on these claims should be affirmed.

### C.   Ms. Thompson's hostile work environment claim fails as a matter of law.

To establish a *prima facie* case of a racially hostile environment,[19] Ms. Thompson must have produced evidence that: 1) she is a member of a protected class; 2) she was subjected to unwelcome harassment; 3) the harassment was based on her race; 4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or otherwise offensive work environment; and 5) the existence of employer liability.   *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999) (citation omitted); *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 348 (6th Cir. 1997) (citations omitted) (*prima facie* elements absent direct evidence).

#### 1.   There is no evidence of harassing conduct towards Ms. Thompson.

Despite her unquestionable obligation to do so, Ms. Thompson failed to identify to the district court, or here, any racially harassing conduct by Sodexho or Mr. Savanick.   *See Bowman v. Shawnee State Univ.,* 220 F.3d 456, 465 (6th Cir. 2000); *see also Reeves v. Fox TV Network,* 983 F. Supp.

---

[19]  Ms. Thompson concedes that no discriminatory statements were made by Mr. Savanick or anyone else from Sodexho that would constitute direct evidence.  Thus, her claim must be analyzed based on circumstantial evidence.  (R. 47, Sodexho MSJ at Ex. D (Thompson Dep.) at 121-122.)

703, 708-09 (N.D. Ohio 1997) (plaintiff must set forth specific facts to oppose summary judgment).  Rather, Ms. Thompson relied on vague allegations that Mr. Savanick:

- "acted like – basically he really didn't want to communicate to me" (R. 47, Sodexho MSJ at Ex. D (Thompson Dep.) at 120-21);
- "was picking with me personally . . . because of certain reasons"[20] (*Id.* at 151);
- "was just coming and saying stuff to be saying stuff" (*Id.* at 152);
- "never mentioned anything good I might have done" (*Id.* at 237);
- found fault with her work;
- "was like real short, Ok, . . . I felt like, I was just bothering him, you know" (*Id.* at 237);
- "put off the scent of he didn't want to be bothered" (*Id.* at 241);
- gave white employees preferential treatment, while black employees were required to perform the harder, dirtier jobs (R. 55, Opp. at 6-7);
- did not discipline white employees for infractions that black employees *"would have been"* disciplined for (*Id.*) (emphasis added);
- did not permit her to evaluate or discipline white employees (*Id.*); and
- *was going to* give her a poor evaluation rating.

(*See also* Appellant's Br. at 23-24.)

Additionally, she offered and continues to offer her unsubstantiated beliefs (as she did with her disparate treatment claim) as to what she thought motivated Mr. Savanick.  That is, she testified that ""I really don't

---

[20] "Picking is like if I was – did not like you and wanted to get rid of you but couldn't think of a reason, I'm going to come to you and say, this is not right, this is not right." (*Id.* at 152.)

believe that [Mr. Savanick] had the respect for me as a supervisor.  I feel like he treated me more like I was just one of the employees instead of the position I was in, even the way he talked to me." (R. 47, Sodexho MSJ at Ex. D (Thompson Dep.) at 254.)    She cannot maintain a hostile work environment claim based on these allegations.

Courts have held routinely that "vague allegations and subjective beliefs" like those proffered by Ms. Thompson cannot generate a factual dispute for purposes of summary judgment. *Pittman*, 451 F. Supp. 2d at 920-21; *see also Palmer v. Ford Motor Co.*, No. 1:03CV430, 2004 U.S. Dist. LEXIS 28073 at *14-15 (N.D. Ohio Apr. 22, 2004) (rejecting conclusory and self-serving averment of discipline unsupported by documentation as not raising an issue of fact); *Johnson,* 982 F. Supp. at 488 ("[T]he Supreme Court and the Sixth Circuit have made clear that bald, self-serving conclusory allegations are insufficient to withstand a motion for summary judgment."). Further, this Circuit has held that simply because a plaintiff opines that her race motivated the acts of another, the court should not leap to an inference of discrimination. *Preston v. Clayton Homes, Inc.,* 167 Fed. Appx. 488, 492 n.1 (6th Cir. 2006) (noting "that the subjective opinions of [plaintiff] . . . are not sufficient to support an inference of discrimination"); *Das v. Ohio State Univ.,* 57 Fed. Appx. 675, 678 n.2 (6th Cir. 2003) ("The subjective conclusory opinions of the plaintiff or her co-workers do not comprise competent proof of

employment discrimination"); *Woythal*, 112 F.3d at 247, *citing Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986) (explaining that "mere personal belief, conjecture and speculation are insufficient to support an inference of . . . discrimination.").

Considering the totality of the evidence before it, the district court appropriately concluded that "[a]t most, the evidence shows that Ms. Thompson and Mr. Savanick did not work well together, and that Mr. Savanick was critical of Ms. Thompson's performance."[21]   (R. 61, Opin. at 26.)   However, anti-discrimination laws are not intended to protect against harsh or unfriendly treatment, or unfair business decisions.  *Plona v. United Parcel Service, Inc.*, 558 F.3d 478 (6th Cir. 2009); *Sundberg v. High Tech Inst., Inc.*, No. 03-CV-3270 (JMR/FLN), 2005 U.S. Dist. LEXIS 1139 (D. Minn. Jan. 26, 2005) ("Neither the law, nor logic, demands that an employer maintain a pristine working environment.") (internal quotation omitted). Instead, they protect against treatment because of a protected classification, like race.  Furthermore, the Sixth Circuit has cautioned that it is of paramount

---

[21]   The only inference that can be properly drawn from this evidence is that Ms. Thompson viewed any comment by Mr. Savanick relating to her performance as being racially motivated because, in her opinion, she had no performance issues. (R. 47, Sodexho MSJ at Ex. D (Thompson Dep.) at 153 (Q: "[W]hether you agreed with him or not, [Savanick's] raising employment issues with you, right? A: I don't think they were performance issues, so I'm going to say no."); and 155 (Q: "You're denying that [Savanick] ever said that you didn't do something right?  A:  I'm denying that they were performance issues.").)

importance that the court "distinguish between harassment and discriminatory harassment" because it is the latter that is required to prove a hostile work environment claim. *Bowman*, 220 F.3d at 464, *citing Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). As the district court explained, there is no evidence to infer, much less establish, that Sodexho or Mr. Savanick engaged in discriminatory harassment toward Ms. Thompson.

### 2.    *Ms. Thompson cannot demonstrate a hostile work environment based on the alleged mistreatment of other African-American employees.*

Contrary to Ms. Thompson's suggestion, the district court did not ignore her evidence regarding alleged discriminatory acts against her African-American co-workers. (Appellant's Br. at 23-24.) Rather, the court found her allegations unpersuasive or irrelevant to her claims. (R. 61, Opin. at 24-26, and 22 n. 7.) As described herein, the district court reached the correct conclusion.

Ms. Thompson's evidence of "other acts" of harassment consists solely of vague allegations, in her own affidavit and the affidavits of several of her former co-workers, that Sodexho and Mr. Savanick treated black employees worse than white employees, assigned black employees dirtier, harder tasks, and that Mr. Savanick called Ms. Thompson and other black employees troublemakers. (Appellant's Br. at 9-11, 15-16, 24; R. 55, Opp. at 15.) According to Ms. Thompson's own words, the alleged unfair treatment of

other black employees she claims to have knowledge of consisted of the following: 1) on one instance during a state inspection a black hostess helped clean the kitchen while a white hostess did not; 2) Mr. Savanick questioned the time it took a black employee to deliver meals to the patients, but did not question the time it took for a white employee to perform that task; and 3) that white employees were not disciplined, *but black employees would have been*, for attendance. (Appellant's Br. at 9-10; R. 47, Sodexho MSJ at Ex. D (Thompson Dep.) at 121-125).)

Ms. Thompson offers inadmissible, unpersuasive evidence to support these allegations. The district court need not have attributed "significant weight" to alleged acts taken towards others of which Ms. Thompson was aware, but that are unrelated to the claimed harassment she encountered. *Hawkins v. Anheuser-Busch, Inc.,* 517 F.3d 321, 335-36 (6th Cir. 2008). Moreover, the weight to be accorded the evidence depends on "whether the similar acts have been clearly established or are mere conjecture, and the proximity in time of the similar acts ... alleged by the plaintiff." (*Id.*) Given that the affidavits Ms. Thompson presented are rife with conjecture without facts to establish the circumstances and timing of the events, the court properly found little probative value or support in them.[22]     Notably, the

---

[22] A properly supported affidavit must show that the affiant can testify regarding the work environment to which the plaintiff was subjected, which in

affidavits offered by Ms. Thompson contain no names, no specific details of any event, and no time periods. Accordingly, they created no genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (instructing that evidence that is "merely colorable" and not "significantly probative" does not defeat a properly supported summary judgment motion); *see also Alderdice v. American Health Holding, Inc.*, 118 F. Supp. 2d 856, 862 (S.D. Ohio 2000) (explaining that affidavits rife with vague, unspecified statements cannot support summary judgment because they do not provide the court with identifying information upon which to review the statements); *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69-70 (6th Cir. 1982) (same); *Diaz v. Westin Hotel*, Case No. 1:06-CV-018, 2007 U.S. Dist. LEXIS 17837 *20-21 (S.D. Ohio Mar. 9, 2007) (same). When reviewing conclusory affidavits similar to those offered here, the Sixth Circuit rejected the affidavits and remarked:

> There are numerous charges of disparate treatment and hostile work environment that are made in general, conclusory terms, but names, times and occasions are missing. In fact, the affidavits are filled with statements of the subjective beliefs of the affiants that DNH was hostile to its African employees and treated them differently from other employees.

this case requires the affiant to have worked alongside Ms. Thompson at the time of the alleged harassing conduct. *See Kauffman v. Kent State Univ.*, No. 93-3302, 1994 U.S. App. LEXIS 6557 *7 (6th Cir. Apr. 1, 1994) (comment made after employer took alleged adverse action lacked any probative value as to employer's motivation when taken); *Drawl v. Cleveland Ortho. Ctr.*, 668 N.E.2d 924, 928 (Ohio App. 1995).

*Wixson v. Dowagiac Nursing Home,* 87 F.3d 164, 171 (6th Cir. 1996).

For instance, regarding her claim of unequal work assignments, Ms. Thompson (citing to former co-worker Bogan and Tobert's affidavits) claims that during a state inspection, unidentified black employees were required to scrub the floors and the walls and clean equipment, but unidentified white employees were not required to do so. (R. 55, Opp. at 7; Ex. B (Bogan Aff.), ¶12; Ex. E (Tobert Aff.), ¶11.) Neither she nor her co-workers provide any details regarding when this alleged inspection occurred, including whether it even occurred during Sodexho's five-month tenure at UH before Ms. Thompson's elimination. (*See id.*) Moreover, they fail to identify any of the black or white employees allegedly affected, their positions within the NSD – i.e. whether they held jobs requiring them to or excluding them from the tasks, or even the manager/supervisor who "required" the employees to perform the tasks.[23] (*See id.*)

Likewise, to support her claim regarding unequal discipline, Ms. Thompson and her former co-workers make vague allegations that "certain"

---

[23] Notably, Ms. Thompson conceded the job assignments remained static at least initially after Sodexho arrived at UH. (R. 47, Sodexo MSJ at Ex. D (Thompson Dep.) at 100-101 (admitting Sodexho only "eventually" made changes to Aramark's structure).) Most interesting, she testified that it was she, not Mr. Savanick, who set the NSD job assignments. (*Id.* at 139 (Q: "I thought you were the supervisor who assigned tasks?"; A: "When I assigned tasks, I would assign them to all.").) Thus, her claim as to differential job assignments is even more perplexing given this fact.

white employees called off work and refused to perform their duties, all the while speculating that "*if* black employees would have behaved in this manner, they would have been disciplined or terminated." (Appellant's Br. at 9-10; R. 55, Opp. at 7; Ex. B (Bogan Aff.), ¶15; Ex. E (Tobert Aff.), ¶5; Ex. D (Jones Aff.), ¶13.) Again, neither Ms. Thompson nor her former co-workers identify the "certain" white employees or provide any basis for their collective conclusion regarding what would have happened to hypothetical black employees. These allegations are patently speculative, thus insufficient to oppose summary judgment. *See Das,* 57 Fed. Appx. at 678; *Chappell,* 803 F.2d 261.

Mr. Hart's affidavit similarly creates no genuine issue of fact because he never worked along side Ms. Thompson. As such, it can hardly establish that Ms. Thompson worked in an environment permeated with discriminatory animus. (R. 55, Opp. at Ex. C (Hart Aff.), ¶1.)[24] Ms. Thompson concedes that she never worked with or even met Mr. Hart. (R. 47, Sodexho MSJ at Ex. D (Thompson Dep.) at 113.) Mr. Hart cannot possibly offer evidence

---

[24] Mr. Hart's allegation that Mr. Savanick called Ms. Thompson a "troublemaker" sometime after her job was eliminated raises no factual issue regarding the UH work environment because that statement was made, if at all, after her elimination. Thus, it does not show the nature of the environment and could not have interfered with her work. *Burnett v. Tyco Corp.,* 203 F.3d 980, 981 (6th Cir. 2000) (co-worker allegations of offensive comments are irrelevant to plaintiff's claim where plaintiff had no knowledge of them).

regarding the environment that Ms. Thompson worked in because he can only claim what he, a white male, and others were subjected to *after* she left UH. Therefore, his affidavit lacks probative value and is inadmissible. *See Drawl*, 668 N.E.2d at 928. Even if it were admissible, it fails to show Sodexho or Mr. Savanick subjected Ms. Thompson to a hostile environment because of her race. *Allen-Cuffee v. Franklin County Juvenile Detention Ctr.*, 2001 U.S. Dist. LEXIS 4754 at *32 (S.D. Ohio Feb. 7, 2001) ("[J]ust because other employees were discriminated against, does not mean that the reason for Ms. Allen-Cuffee's termination was a pretext for unlawful discrimination.").

Like the plaintiffs in the above cases, Ms. Thompson and her former co-workers freely offer their general opinions of hostile and disparate treatment of NSD employees by Sodexho or Mr. Savanick, yet provide no names, times or occasions to support their opinions. (*See* R. 55, Opp. at 6-8, Exs. A-E.) Because of these defects, the affidavits are insufficient to defeat summary judgment. *See Alderdice*, 118 F. Supp. 2d at 862; *see also Batuyong v. Sec'y of DOD*, No. 1:07-CV-944, 2008 U.S. Dist. LEXIS 7967 *17 (N.D. Ohio Feb. 4, 2008), *citing Frazier v. USF Holland, Inc.*, 250 Fed. Appx. 142, 147 (6th Cir. 2007) (rejecting vague allegation that "other" non-minorities were treated better as insufficient to meet the *prima facie* case).

42

### 3.    *Ms. Thompson failed to meet her burden of proof for a hostile work environment claim.*

Lastly, even if all of Ms. Thompson's allegations regarding Mr. Savanick's conduct of herself and her black co-workers were true – which they are not – these *de minimus* actions are not actionable because they do not rise to the level required: that the alleged action "be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Kocsis v. Multi-Care Mgmt, Inc.*, 97 F.3d 876, 886 (6th Cir. 1996); *see also Weigold v. ABC Appliance Co.,* 105 Fed. Appx. 702, 707-708 (6th Cir. July 7, 2004). As stated by the Supreme Court, "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment . . . is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

After reviewing the evidence in its totality, as required, the district court held that Ms. Thompson fails to demonstrate an actionable hostile environment because she failed to show that actions toward her were sufficiently severe to alter her work conditions or that the way Mr. Savanick treated her created a work environment "permeated with discriminatory intimidation; ridicule; and insult" of the kind and magnitude that could be characterized as "sufficiently severe or pervasive as to alter the conditions of her employment." (R. 61, Opin. at 25-26) (internal quotation omitted).

43

The evidence Ms. Thompson proffers does not even suggest, let alone prove, that her work environment was "permeated" with discriminatory ridicule. *See Harris*, 510 U.S. at 21. At most, her testimony shows that she worked in what she perceived to be an unfriendly environment. (R. 47, Sodexho MSJ at Ex. D (Thompson Dep.) at 120-21 (Mr. Savanick "acted like . . . he really didn't want to communicate with me").) An unfriendly or strict workplace is insufficient to establish defendant's liability. *See Morris*, 201 F.3d 784 (6th Cir. 2000) (holding that the incidents plaintiff complained of were either not severe enough to create a hostile work environment or that plaintiff presented no evidence to demonstrate that the remaining incidents were committed "because of sex" rather than some personal conflict); *Sundberg,* 2005 U.S. Dist. LEXIS 1139 at *16 (rejecting sexual harassment claim because "[a] supervisor's failure to be nice. . . will not suffice. . ." to establish a hostile environment). Significantly, Ms. Thompson's reliance on the alleged unfriendly environment is also insufficient to avoid summary judgment given that she acknowledged she would have stayed at UH had her position remained and that Mr. Savanick's alleged treatment did not prevent her from performing her job. (R. 47, Sodexho MSJ at Ex. D (Thompson Dep.) at 185, 264-65.)

## III.  The District Court Properly Granted Summary Judgment on Ms. Thompson's Retaliation Claim.

Ms. Thompson presented no evidence supporting a causal link between any protected complaint made by her and any adverse action taken against her.  Therefore, the district court properly disposed of Ms. Thompson's retaliation claim.

Assuming, *arguendo,* that she complained of perceived discrimination by Mr. Savanick to Mr. Bennett, she has not established retaliation because she failed to show knowledge on the part of Sodexho or Mr. Savanick or to identify evidence linking any complaint to her job elimination.  True to form, she offered the district court and this Court only her uncorroborated conjecture and feelings.  Conjecture and feelings cannot save her claim.

To prevail, Ms. Thompson must set forth admissible evidence to demonstrate that Sodexho and Mr. Savanick knew she raised a discrimination complaint and terminated her because of that complaint. *Hamilton v. Starcom Mediavest Group, Inc.*, 522 F.3d 623, 628 (6th Cir. 2008) (noting that "defendant must have known about the protected activity in order for it to have motivated the adverse action"); *Cline v. BWXT Y-12, LLC*, 521 F.3d 507, 513 (6th Cir. 2008) (*quoting Fenton v. Hi-SAN, Inc.*, 174 F.3d 827, 832 (6th Cir 1999) (holding that the employee's "protected activity had to be 'known to those who made [the adverse employment] decision'"); *Randolph v.*

45

*Ohio Dep't of Youth Servs.*, 453 F.3d 724, 736 (6th Cir. 2006).

The undisputed evidence demonstrates that no one within Sodexho, not Mr. Savanick, Ms. Henefeld, or Ms. Scheafnocker, had any knowledge that Ms. Thompson made the alleged discrimination complaints about Mr. Savanick. (R. 47, Sodexho MSJ at 17.) Moreover, neither Mr. Bennett nor Ms. Newman had any recollection or knowledge that Ms. Thompson made such complaints, despite their recollection, meticulous documentation and follow-up when Ms. Thompson previously made complaints about the two Aramark managers' treatment of her. (*Id.* at 5-6, 17.)

Ms. Thompson alleges, without any facts to support her claim, that "the brief time span between the time Sodexho took over the [NSD] during which [she] constantly complained and the time of [her] termination requires the inference that [her] termination was retaliatory."[25] (Appellant's Br. at 25.) To reach this inference, the Court would have to ignore the undisputed record evidence that Sodexho initially recommended eliminating her position as part of its 2004 contract proposal—well before any alleged complaint to UH

---

[25] Ms. Thompson's suggestion that the timing of her termination (allegedly three months after she complained) by itself creates an issue of fact is controverted by this Circuit's authority. *See Lindsey v. Whirlpool Corp.*, 295 Fed. Appx. 758, 769-770 (6th Cir. 2008) ("mere temporal proximity . . . without other indicia of retaliatory conduct" is not sufficient to establish the causal connection element of a retaliation claim); *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (3-4 months lapse too remote to infer causation).

personnel, assuming any such complaint was ever made. (R. 47, Sodexho MSJ at Ex. A (Bucciarelli Dec.), ¶8.)

In addition, Ms. Thompson asks this Court to alter the elements for a retaliation claim and permit her to maintain her claim by inferring "retaliatory intent" by Mr. Savanick based on his alleged treatment of other black employees <u>after</u> Ms. Thompson had left UH. (Appellant's Br. at 25; R. 55, Opp. at 20.) To demonstrate this supposed retaliatory intent, she points to Mr. Hart's affidavit where he alleges that sometime in the year after Ms. Thompson's job elimination, Mr. Savanick referred to Ms. Thompson and some of her former co-workers as "troublemaker[s]," instructed Mr. Hart to "get rid of" the co-workers,[26] and treated Mr. Hart abusively after he complained to Mr. Bennett about how he and other employees were treated. (*Id.*) These events, all of which are alleged to have occurred the year after Ms. Thompson's termination, do not show that Sodexho *terminated her* due to *her* discrimination complaint. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (noting plaintiff must present sufficient evidence to support an inference that an adverse action would have not have been taken but for the protected activity).

Based on the evidence presented to it, which has been reiterated

---

[26] The undisputed evidence establishes that Mr. Hart had no authority to fire UH employees. (R. 47, Sodexho MSJ at 6.)

verbatim to this Court, the district court properly concluded that Ms. Thompson failed to present any evidence "to suggest that the position was eliminated, or that her employment was terminated, because of her complaints." (R. 61, Opin. at 27.) The court concluded that her feeling that there is a link between her alleged complaint and her position elimination cannot suffice to prove the retaliation elements. (*Id.*) Consequently, it granted summary judgment to Sodexho and Mr. Savanick on Ms. Thompson's retaliation claim, a decision which should be affirmed.

## IV. The District Court Properly Granted Sodexho and Mr. Savanick's Motion on Ms. Thompson's FMLA Interference Claim.

### A. Mr. Savanick cannot be held individually liable under the FMLA.

Although the district court did not analyze the issue, this Court should affirm judgment in favor of Mr. Savanick on Ms. Thompson's FMLA interference claim both on the merits and because he cannot be held individually liable for this claim. Mr. Savanick cannot be held liable under the FMLA in his individual capacity because he did not "exercise sufficient control over [Plaintiff's] leave and employment status." *Mueller v. J.P. Morgan Chase & Co.*, No. 1:05CV560, 2007 U.S. Dist. LEXIS 20828 *22 (N.D. Ohio 2007).

The record evidence demonstrated that Mr. Savanick lacked any authority to take action related to Ms. Thompson's FMLA leave. (R. 47, Sodexho MSJ at 19.) Likewise, he lacked authority to and did not even

48

directly recommend that her job be eliminated. (*Id.* at Ex. C (Henefeld Dep.) at 53; Ex. E (Bennett Dep.) at 140; Ex. F (Newman Dep.) at 58-59; *see also* Ex. D (Thompson Dep.) at 253 (Ms. Thompson acknowledged that Mr. Savanick had no authority to terminate her.) In her opposition and on appeal, Ms. Thompson failed to rebut this legal or factual authority.[27] In fact, she makes not even the slightest reference to Mr. Savanick when discussing her FMLA claim on appeal.

Based on the foregoing, Mr. Savanick is entitled to summary judgment on Ms. Thompson's FMLA claim.

**B.   There is no evidence Sodexho or Mr. Savanick interfered with Ms. Thompson's FMLA rights.**

An employee who takes FMLA leave has no greater rights to future employment than any other employee. *See* 29 U.S.C. § 2614(a) (an employee has no "right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave"); 29 C.F.R. § 825.216(a)("an employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the

---

[27] Perhaps Ms. Thompson has confused the issue of individual liability with joint employer liability under the FMLA. That is, on appeal and before the district court she extensively outlined the joint employer requirements (which neither Sodexho nor UH raised) under the FMLA, without mentioning *at all* the individual liability requirements. (Appellant's Br. at 26-28.)

FMLA leave period"). Hence, if an employee's position would have been eliminated even if she had not taken any leave, an employee cannot prevail on an FMLA interference claim. *See Arban v. West Publ. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003); *Pharakhone v. Nissan N. Am., Inc.*, 324 F.3d 405, 407 (6th Cir. 2003).

The undisputed evidence shows that Ms. Thompson's job would have been eliminated regardless of her taking any protected leave. In finding that Ms. Thompson failed to prove FMLA interference, the district court relied on the following unrebutted evidence:[28]

- Sodexho made the elimination proposal in 2004 before providing any services to UH;
- Bob Bucciarelli, who made the 2004 proposal, had not met Ms. Thompson when he made the proposal;
- Mr. Savanick and Ms. Henefeld had no involvement in the proposal; and
- Ms. Henefeld's memorandum suggesting the position elimination preceded Ms. Thompson's leave by over a month.

(R. 61, Opin. at 28; *See* R. 47, Sodexho MSJ at Ex. A (Bucciarelli Dec.), ¶¶7-8, 14 and Ex. C (Henefeld Dep.) at Ex. 4; R. 55, Opp. at Ex. A (Thompson

---

[28] The district court also analyzed Ms. Thompson's suggestion that her termination was in retaliation for having taken FMLA. Ms. Thompson has not argued retaliation on appeal, therefore, she has forfeited this claim. *Reed*, 167 F.3d at 993. Moreover, Ms. Thompson presented no evidence linking her leave to the decision to eliminate her job. She failed to identify any facts indicative of such a connection, other than her feeling that she may have been terminated for taking too much leave and that the elimination was conveyed to her after she was to have returned from leave. (R. 61, Opin. At 28.)

Aff.), ¶38 (she took leave twice during Sodexho's tenure, both were after Ms. Henefeld's proposal).)  Based on this evidence, the district court concluded that Ms. Thompson failed to prove her FMLA interference claim because the evidence showed that her position would have been eliminated even if she had never taken leave.

On appeal, Ms. Thompson identified no error in the court's decision.  In an attempt to save this claim, she simply points to the fact that her position was eliminated following her leave and claims this constitutes interference. (Appellant's Br. at 28-29.)  She ignores the factual record and asks this Court, as she did the district court, to make the unsupported quantum leap from the failure to restore her to her position to interference with her FMLA rights.  (R. 55, Opp. at 23.)   To do so would require the court to ignore the uncontroverted record evidence that demonstrates Sodexho recommended eliminating her position first in 2004 and then again in 2005, undisputedly *before* she took her FMLA leave.  (R. 47, Sodexho MSJ at 19-20; R. 58, Sodexho Reply Br. at 15.)   Accordingly, there is no basis upon which a reasonable person could conclude that Sodexho and Mr. Savanick interfered with her FMLA rights.

Importantly, this Court need not even consider Ms. Thompson's unsupported assertion that "Defendants' reasons for terminating [her] are pretextual" (Appellant's Br. at 29) because the timing of Sodexho's

recommendations—before she took FMLA leave—is dispositive of her claim. And as outlined in the foregoing sections, Ms. Thompson produced no admissible evidence upon which the district court could have reasonably adduced that Sodexho or Mr. Savanick recommended eliminating her position as a pretext for unlawful conduct.

Thus, the district court's decision to grant judgment as a matter of law to Sodexho and Mr. Savanick on this claim should be affirmed.

## CONCLUSION

For the foregoing reasons, Defendants Sodexho Management, Inc. and Steve Savanick respectfully request that this Court enter an Order wholly affirming the Opinion and Order of the district court in which it entered summary judgment to them on each of Ms. Thompson's claims.

Respectfully submitted,

/s/ Nicole J. Quathamer
Margaret M. Koesel (0041537)
Nicole J. Quathamer (0070893)
PORTER WRIGHT MORRIS & ARTHUR LLP
925 Euclid Avenue, Suite 1700
Cleveland, OH  44115-1483
(216) 443-9000/ fax (216) 443-9011
nquathamer@porterwright.com
mkoesel@porterwright.com

Attorneys for Defendants Sodexho
Management, Inc. and Steve Savanick

52

## CERTIFICATE OF COMPLIANCE

Pursuant to 6th Cir. R. 32(a), I, Nicole J. Quathamer, hereby certify that

the Brief of Defendants-Appellees Sodexho Management, Inc. and Steve

Savanick complies with the 14,000 word type-volume limitation set forth in

Fed. R. App. P. 32(a)(7), 6th Cir. R. 32(a)(7)(B).  The word-processing system

used to prepare this Brief indicates that the word count for this Brief is 12,550

for those sections that count toward the limitation pursuant to Rule 32(a)(7).

/s/ Nicole J. Quathamer
Nicole J. Quathamer (0070893)
Attorney for Defendants-Appellees
Sodexho Management, Inc. and
Steve Savanick

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2009 a copy of foregoing Appellee Brief was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

/s/ Nicole J. Quathamer
Nicole J. Quathamer (0070893)
PORTER WRIGHT MORRIS & ARTHUR LLP
925 Euclid Avenue, Suite 1700
Cleveland, OH 44115
Phone: (216) 443-9000
Fax: (216) 443-9011
E-mail: nquathamer@porterwright.com

## ADDENDUM

*Allen-Cuffee v. Franklin County Juvenile Detention Ctr.*, 2001 U.S. Dist. LEXIS 4754 (S.D. Ohio Feb. 7, 2001)

*Batuyong v. Sec'y of DOD*, No. 1:07-CV-944, 2008 U.S. Dist. LEXIS 7967 (N.D. Ohio Feb. 4, 2008)

*Diaz v. Westin Hotel*, Case No. 1:06-CV-018, 2007 U.S. Dist. LEXIS 17837 (S.D. Ohio Mar. 9, 2007)

*Kauffman v. Kent State University*, No. 93-3302, 1994 U.S. App. LEXIS 6557 (6th Cir. Apr. 1, 1994)

*Mueller v. J.P. Morgan Chase & Co.*, No. 1:05CV560, 2007 U.S. Dist. LEXIS 20828 (N.D. Ohio 2007)

*Palmer v. Ford Motor Co.*, No. 1:03CV430, 2004 U.S. Dist. LEXIS 28073 (N.D. Ohio Apr. 22, 2004)

*Sundberg v. High Tech Inst., Inc.,* No. 03-CV-3270 (JMR/FLN), 2005 U.S. Dist. LEXIS 1139 (D. Minn. Jan. 26, 2005)