NOT RECOMMENDED FOR PUBLICATION
File Name: 10a0225n.06

No. 08-4435

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 12, 2010
LEONARD GREEN, Clerk

ALEATHER THOMPSON,   )
                    )
    Plaintiff-Appellant,   )
                    )
v.                  )   ON APPEAL FROM THE UNITED
                    )   STATES DISTRICT COURT FOR THE
UHHS RICHMOND HEIGHTS HOSPITAL,   )   NORTHERN DISTRICT OF OHIO
INC., SODEXHO MANAGEMENT, INC.;   )
and STEVEN SAVANICK,   )
                    )
    Defendants-Appellees.   )
                    )

BEFORE:    MERRITT, GIBBONS, and ROGERS, Circuit Judges.

**MERRITT, Circuit Judge.**  This case arises out of the termination of plaintiff Aleather Thompson on November 2, 2005, from her job as Food Production Supervisor at Richmond Heights Hospital in Cleveland, Ohio. Thompson claims that her former employer, UHHS Richmond Heights Hospital ("Hospital"), Sodexho Management, Inc. ("Sodexho"), the third-party contractor in charge of the Hospital's food service, and Sodexho's General Manager, Steven Savanick ("Savanick"), improperly fired her in violation of state and federal anti-discrimination law and the Family Medical Leave Act ("FMLA"). She also brings claims of retaliation and racially hostile work environment. The District Court dismissed all of Thompson's claims on summary judgment. The key issues on

No. 08-4435
*Thompson v. UHHS Richmond Heights Hospital, Inc., et al.*

appeal are whether there is a dispute of material facts on her various claims on which summary judgment was granted, issues that we always review *de novo*.  Because Thompson has not presented sufficient evidence to overcome summary judgment on any FMLA claim, racially hostile work environment claim, or retaliation claim, we affirm the District Court's dismissal of each of those claims.  We also affirm the District Court's dismissal of Thompson's discriminatory termination claim as to defendant Hospital.  But because Thompson had arguably superior qualifications than her replacement and has produced other evidence of race discrimination, we reverse the District Court's grant of summary judgment on Thompson's wrongful termination claim against defendants Sodexho and Savanick.

## I. Background

Thompson was hired by the Hospital in April 1982 as a Production Cook in the Nutritional Services Department.  The Nutritional Services Department provides food service to visitors, employees, and patients.  In approximately 2001, Thompson was promoted to Food Production Supervisor.

In June 2005, third-party food service contractor Sodexho began managing the Hospital's Nutritional Services Department.  Sodexho supervised the Nutritional Services Department operations, including the Nutritional Services Department staff.  Mary Henefeld, a Sodexho employee, was assigned as the General Manager.  Henefeld reported to Sodexho, to the Hospital's human resources group, and to Kris Bennett, the Hospital's Director of Finance and Support Services. Steve Savanick, a Sodexho employee, was assigned to the Hospital as an Executive Chef.  Savanick reported to Henefeld.  Thompson reported to Savanick.

*No. 08-4435*
*Thompson v. UHHS Richmond Heights Hospital, Inc., et al.*

Thompson claims numerous instances of racial discrimination when Sodexho began managing the Department. Thompson alleges that Savanick gave white employees preferential treatment; that black employees were required to perform the harder, dirtier jobs; that certain white employees talked back to Thompson and were not disciplined; and that Savanick did not permit Thompson to evaluate or discipline white employees, despite her supervisory role.

On or around August 16, 2005, Henefeld prepared a memorandum to Bennett entitled "Proposed Staffing Changes." The Memo stated that it was from "Mary [Henefeld] & Steve [Savanick]" and recommended the creation of a new position, Chef 1, to "replace" Thompson's position. Thompson claims that this position had basically the same responsibilities she had, but Sodexho contends that the two positions were substantially different. Sodexho posted the Chef 1 position on its national website in late August 2005. Applications were submitted through a recruiter who pre-screened applicants and sent the most viable candidates for interview. Thompson testified she did not apply because she was unaware the new position was posted and because she was unaware that her position would be eliminated. Sodexho completed its hiring process in early October 2005, and offered the position to Jack Hart, a white male.

Thompson took an approved FMLA leave from October 22, 2005, through November 2, 2005. When she returned to work on November 2, 2005, Thompson was called into a meeting with Martha Newman, the Hospital's Human Resources Manager, Bennett, and Savanick. Thompson was informed that her position had been eliminated. Thompson asserts that there was no discussion as to whether she could apply for other positions at the Hospital or with Sodexho. Newman testified that she told Thompson she could apply for other jobs with the hospital.

No. 08-4435
*Thompson v. UHHS Richmond Heights Hospital, Inc., et al.*

Following Thompson's termination, Hart started work as Chef 1. Hart was employed directly by Sodexho. Thompson alleges that Hart replaced her and that he was unqualified for the Chef 1 position because he could not perform ordering due to a learning disability, lacked formal culinary certification, and had less experience than Thompson. Thompson claims that after her employment ended, Savanick told Hart that she was a trouble maker. Thompson also claims that after her employment ended, Savanick told Hart to "get rid" of three other black employees because they were also trouble makers.

Thompson filed a civil action in the United States District Court for the Northern District of Ohio in March 2007, and the District Court dismissed all her claims on summary judgment on October 14, 2008. Thompson timely appeals.

## II. Analysis

On appeal, Thompson brings four claims against all defendants: (1) that she was terminated because of her race; (2) that she was subjected to a racially hostile work environment; (3) that defendants retaliated against her for having complained about racially discriminatory practices; and (4) that defendants violated the FMLA.

### A. Discrimination

Thompson claims defendants discriminated against her on the basis of race in violation of the Ohio Civil Rights Act and 42 U.S.C. § 1981. Under Ohio law, it is unlawful:

> [f]or any employer, because of the race . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

*No. 08-4435*
*Thompson v. UHHS Richmond Heights Hospital, Inc., et al.*

O.R.C. § 4112.02(A). Likewise, § 1981 prohibits racial discrimination in the "making, performance, modification, and termination of contracts." 42 U.S.C. § 1981. Both the Ohio Civil Rights Act and § 1981 have the same standard of proof as Title VII claims. *See Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008) ("[a]ll references throughout this opinion to Title VII are therefore equally applicable to the plaintiffs' claims under Ohio Revised Code § 4112"); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 n.5 (6th Cir. 2000) (noting that the elements of *prima facie* case and burdens of proof are the same for Title VII and § 1981). Accordingly, all parties agree that we should apply Title VII analysis to Thompson's discrimination claims. *Cf. Miller v. City of Canton* 319 F. App'x 411, 420 n.5 (6th Cir. 2009) (recognizing Title VII claim as time-barred, yet analyzing § 1981 and O.R.C. § 4112.02 claims using the same Title VII framework).

To establish a claim of racial discrimination, we apply the familiar burden-shifting approach as articulated by the Supreme Court in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). Thompson can establish a *prima facie* case of race discrimination through circumstantial evidence by showing that (1) she is a member of a protected class; (2) she was subject to an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a person outside her protected class.

### i. Adverse employment action

That Thompson, an African American, is a member of a protected class is not disputed. It is also not disputed that she was subject to an adverse employment action when she was terminated on November 2, 2005. Thompson argues that she was fired because of her race. Defendants assert that Thompson's position was eliminated as part of a restructuring. Thompson counters that, if it

*No. 08-4435*
*Thompson v. UHHS Richmond Heights Hospital, Inc., et al.*

were a restructuring, she should have been informed of her impending termination so that she could apply for the new position, and that the failure to do so was the result of racial discrimination. It may be that Thompson's wrongful termination claim is better considered a "failure to transfer," which we have previously found has four elements: (1) she was a member of a protected class; (2) at the time of her termination she was qualified for other available positions within the corporation; (3) the employer did not offer such positions to her; and (4) other direct or circumstantial evidence supporting an inference of discrimination. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 351 (6th Cir. 1998).[1]

Thompson's claim need not fit perfectly within one of our enumerated tests in order to survive summary judgment. The requirements for establishing a *prima facie* case of discrimination are always context-dependent, and "[t]he key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007) (quoting *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007)).

### ii. Qualified for the position

Thompson has pled sufficient facts to create a genuine dispute as to whether she was qualified for both the Food Production Supervisor position – from which she was fired – and the

---

[1] We cannot, however, construe Thompsom's claim as a "failure to hire" or "failure to promote" because she did not actually apply for the new position. *See Anthony v. BTR Auto Sealing Sys., Inc.*, 339 F.3d 506, 515 (6th Cir. 2003) (*prima facie* case requires that plaintiff actually applied for position).

*No. 08-4435*
*Thompson v. UHHS Richmond Heights Hospital, Inc., et al.*

Chef 1 position – to which she was not transferred. Thompson was certified, had completed courses in food service sanitary management, had on-the-job training, and had over twenty years experience at the Hospital.

### iii. Replaced

The District Court found that Thompson failed to make out a *prima facie* claim because she was not "replaced." Thompson asserts that she was replaced by Jack Hart, a white male, because the Chef 1 position for which he was hired was essentially Food Production Supervisor by another name. Defendants counter that the two positions were substantially different. We have held previously that an employee is considered replaced "only when another employee is hired or reassigned to perform the plaintiff's duties." *Geiger v. Tower Auto.*, 579 F.3d 614, 623 (6th Cir. 2009) (quoting *Barnes v. GenCorp*, 896 F.2d 1457, 1465 (6th Cir. 1990)).

Some, but not all, of Thompson's duties appear to have been transferred to Hart. As Food Production Supervisor, Thompson opened the kitchen, recorded temperatures, coordinated the staff schedule, supervised the kitchen staff of about thirty employees, assisted with inventory and ordering, and was responsible for catering functions. Defendants argue that while the Chef 1 position included many of those tasks, it involved less ordering and inventory, with more of an emphasis on training chefs. Unlike the Food Production Supervisor, Chef 1 was not responsible for scheduling, evaluating employees, or disciplining employees. The positions, however, occupied the same structure within the hierarchy of the kitchen and included managing and reporting to the same people. Drawing all inferences in favor of Thompson, a question of fact exists regarding whether the two positions were substantially similar so that Hart replaced Thompson.

*No. 08-4435*
*Thompson v. UHHS Richmond Heights Hospital, Inc., et al.*

### iv. Pretext

Under the burden-shifting framework, once Thompson has made out her *prima facie* claim, the burden is on the defendants to offer a legitimate, non-discriminatory reason for the adverse employment action. Defendants argue that Thompson's termination was motivated by the restructuring of the department. The record shows that, prior to contracting with the Hospital, Sodexho contemplated the elimination of the Food Production Supervisor position. This restructuring was first proposed by Sodexho employee Robert Bucciarelli in May of 2004. Bucciarelli had never seen Thompson at the time and was not aware of her race.

Thompson has the burden of showing that the defendants' reason for her termination – the restructuring of the department – is a pretext for discrimination. In *Risch v. Royal Oak Police Dept.*, 581 F.3d 383 (6th Cir. 2009), we held that evidence that the plaintiff is more qualified for a job than her replacement, as well as evidence of patterns of discrimination and post-hoc behavior, are all admissible to create an inference of pretext.[2]

As evidence of pretext, Thompson argues that Bucciarelli's proposal was merely a guideline and that many other proposals from that memo were not followed. She claims that the real impetus for her termination was the August 16, 2005, memo drafted by Mary Henefeld and Steve Savanick, not Bucciarelli's proposal. Thompson further argues that either the Hospital or Sodexho could have

---

[2]This same evidence can provide the additional evidence tending to indicate that the employer singled out the plaintiff for discharge for the impermissible reasons that are required in failure to transfer claims.

*No. 08-4435*
*Thompson v. UHHS Richmond Heights Hospital, Inc., et al.*

placed her in the Chef 1 position–or at the very least informed her of its existence. She testified that had she known of the job opening, she would have applied for it.

While the August 16 memo was drafted by Henefeld and Savanick, it is undisputed that the original idea to eliminate Thompson's position was Bucciarelli's, and that the August 16 memo was consistent with Bucciarelli's recommendations. On the other hand, Bucciarelli's memo did not address whether the change required a new hire or if the same employee could change job titles. While the Hospital did not have a duty to inform Thompson of the job change, their failure to alert her to her impending termination or of the Chef 1 vacancy creates an inference that they were intentionally attempting to get rid of Thompson.

To bolster her pretext claim, Thompson also offers evidence of a pattern of discrimination in the workplace as well as specific accusations that Savanick treated her disrespectfully because of her race. Thompson's deposition testimony – supported by affidavits of three other black employees: April Tobert, Jackie Jones, and Teresa Bogan–asserts that the environment in which Thompson worked was pervaded by racial discrimination. She asserts unequal allocation of jobs between black and white employees, with the black employees being required to perform the "dirtier" jobs. She claims that black employees were subject to higher scrutiny when they wanted to take time off and that the scheduling was discriminatory.

Thompson also asserts a number of complaints directly at Savanick, claiming that he constantly picked on her, disrespected her, treated her poorly because of her race, and refused to allow her to discipline the white employees. While Savanick did not himself have the authority to fire Thompson, he did participate in the decision-making process. "Circumstantial evidence

No. 08-4435
*Thompson v. UHHS Richmond Heights Hospital, Inc., et al.*

establishing the existence of a discriminatory atmosphere at the defendant's workplace in turn may serve as circumstantial evidence of individualized discrimination directed at the plaintiff." *Ercegovich*, 154 F.3d at 356.

Thompson also offers the affidavit of Jack Hart, who took the Chef 1 position after Thompson's termination. Hart asserts that Savanick told him to "get rid of" certain black employees whom Savanick called "troublemakers" and that he also referred to Thompson as a "troublemaker." The District Court found this assertion to be of little weight. We disagree. In discrimination cases, evidence of animus is difficult to demonstrate. That Savanick referred to plaintiff, and other black employees, as "troublemakers" and wanted to "get rid of them" can be evidence of pretext. Finally, Thompson offers some evidence that she was more qualified for the Chef 1 position than Hart, who lacked formal culinary certification, had fewer years of experience than Thompson, and because of a learning disability could not perform tasks that involved writing.

The corroborated accusations of patterns of discriminatory behavior, the post-termination comments, and the evidence that Thompson was more qualified than Hart create a reasonable inference that Bucciarelli's original memo was resurrected by Savanick and Henefeld in order to provide an excuse to get rid of Thompson for racially-motivated, discriminatory reasons.

### v. Defendants

Thompson asserts all claims against (1) the Hospital, (2) food contractor Sodexho, and (3) Sodexho employee Steven Savanick. The District Court did not parse the three defendants in its analysis, although the Hospital filed a separate motion for summary judgment. While only the

No. 08-4435
*Thompson v. UHHS Richmond Heights Hospital, Inc., et al.*

Hospital was Thompson's technical employer, the parties do not dispute that all three defendants qualify as "employers" within the broad language of § 1981 and Ohio law.

All of Thompson's evidence of pretext or additional evidence of discriminatory behavior concern employees of Sodexho, particularly Savanick. Thompson has pled no facts connecting any possible racial motivation for her termination to the Hospital. Therefore, we affirm the District Court's dismissal of Thompson's discrimination claim as to defendant UHHS Richmond Heights Hospital and reverse as to defendants Sodexho and Savanick.[3]

### B. Racially Hostile Work Environment

Thompson claims that pervasive racism in the hospital's Nutrition Services Department created a racially hostile work environment. The protections of Title VII extend to an environment in which "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Neither Thompson nor her supporting affidavits offer specific incidents – dates, times, full descriptions – of racially-based harassment. Such evidence of harassment is necessary to make out a *prima facie* case of a racially hostile work environment in the absence of direct evidence of discriminatory statements. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999); *see also Bowman v. Shawnee State Univ.*, 220 F.3d 456, 465 (6th Cir. 2000) (plaintiff must show incidents of harassment based on prohibited

---

[3]Although Sodexho argues that Savanick did not have the power to fire Thompson, the evidence suggests that he was at least involved in the decision-making process and any manager or supervisor is subject to liability under Ohio employment discrimination law for his or her allegedly discriminatory conduct. *Genero v. Cent. Transp. Inc.*, 703 N.E.2d 782, 785 (Ohio 1999).

No. 08-4435
*Thompson v. UHHS Richmond Heights Hospital, Inc., et al.*

grounds to oppose summary judgment); *Cf. Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 765-67 (6th Cir. 2008) (plaintiff with evidence of racial harassment relevant to discrimination claim could not establish racially hostile work environment). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment . . . is beyond Title VII's purview." *Harris* 510 U.S. at 21-22. Accordingly, we affirm the District Court's dismissal of Thompson's hostile work environment claims.

### C.  Retaliation

Thompson claims defendants retaliated against her for having complained about racial discrimination in violation of O.R.C. § 4112.02 (I). A claimant establishes a *prima facie* case of retaliation by demonstrating (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) there was a causal connection between the protected activity and the adverse employment action. *Williams v. Nashville Network*, 132 F.3d 1123, 1131 (6th Cir. 1997). There is a factual dispute as to whether Thompson complained about perceived discrimination to Savanick, but there is no evidence to suggest that such complaints – whether or not they occurred – led to Thompson's termination. To demonstrate a causal connection between a materially adverse action and the exercise of protected rights, "a plaintiff must proffer evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007) (citations omitted). The District Court correctly found that there is no evidence of a causal link between any of Thompson's complaints and her termination. The District Court correctly dismissed all of Thompson's retaliation claims.

### D.  Family Medical Leave Act

Thompson alleges that the defendants interfered with her FMLA right to be restored to her position of employment when she returned from medical leave. 29 U.S.C. § 2614(a). While Thompson was terminated the day after returning from medical leave, the record shows that she would have been fired regardless of whether or not she had taken leave. Hence, there is no causal link between her medical leave and her termination. The FMLA offers no protection to those who would have been fired whether or not they took leave. *See* 29 U.S.C. § 2614(a)(3)(B); 29 C.F.R. § 825.216(a); *Arban v. West Publ. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003); *Pharakhone v. Nissan N. Am., Inc.*, 324 F.3d 405, 407-08 (6th Cir. 2003). The District Court correctly dismissed all of Thompson's FMLA claims.

### III. Conclusion

For these reasons, we REVERSE the District Court's grant of summary judgment to Sodexho and Savanick on the wrongful termination claim, AFFIRM the District Court's grant of summary judgment on all other claims, and REMAND for further proceedings consistent with this opinion.